297 S.C. 118 (1988)
374 S.E.2d 922
SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent
v.
Louella McRendy HUMPHREYS and Gilbert Vereen, Sr. In re Gilbert VEREEN, Jr. (D.O.B. 12-27-83) Appeal of Louella McRendy HUMPHREYS.
1243
Court of Appeals of South Carolina.
Heard October 11, 1988.
Decided November 14, 1988.
*119 Bradish J. Waring and Stephen P. Groves of Young, Clement, Rivers & Tisdale, Charleston, for appellant.
Barbara Machell, of South Carolina Dept. of Social Services, Columbia, for respondent.
William C. Cleveland of Haynsworth, Marion, McKay and Guerard, Charleston, for Gilbert Vereen, Jr.
Heard Oct. 11, 1988.
Decided Nov. 14, 1988.
GARDNER, Judge:
The appealed order terminated the parental rights of Louella Humphreys (the mother), who is mentally retarded; a Guardian ad Litem represented her interests in this proceeding. We affirm.

ISSUES
The issues presented are (1) whether there is clear and convincing evidence of record to support the termination of the mother's parental rights under Section 20-7-1572(6), Code of Laws of South Carolina (1976), and (2) whether the rehabilitative efforts of the Department of Social Services or any other agency is relevant to this appeal.

FACTS
This action was instituted by the South Carolina Department of Social Services (DSS). The appealed order of April 11, 1987, terminated the mother's parental rights with a finding that the mother could not provide minimally acceptable care for the child because of her mental deficiency and, further, that the mother's condition was unlikely to change within a reasonable time.
Dr. William H. Snyder, a clinical psychologist, testified for DSS. Dr. Snyder testified that the mother had a full scale I.Q. of 66 and that this placed her in the "mild mentally deficient range of intelligence." Dr. Snyder testified that on a Wide Range Achievement Test, the mother's *120 scores consistently indicate an educational achievement somewhere in the latter half of the third grade. Dr. Snyder testified that in his opinion the mother would not be capable of recognizing dangers, providing for the child's sanitary needs, or providing an appropriate diet. He also testified that the mother would have problems recognizing physical symptoms of the child which might require that the child be seen by a doctor. He further testified that the mother is "essentially illiterate" and that she would probably need supervision in the handling of money. Dr. Snyder also testified that in his opinion there was little likelihood that a course designed to teach mentally deficient people parenting skills could ever make the mother capable of being a primary care parent for the child.
No purpose would be served in a further review of the clear and convincing evidence of record that the mother has a "diagnosable condition" of "mental deficiency" which makes her "unlikely to provide minimally acceptable care of the child" and is "unlikely to change within a reasonable time." Section 20-7-1572(6), Code of Laws of South Carolina (1976).
The mother was represented by extremely capable attorneys who offered evidence to the effect that the mother might be taught sufficient parenting skills to justify returning the custody of the child to the mother. This testimony was largely that of a Ms. D'Agusto, an attorney and the Guardian ad Litem for the mother and the regional coordinator for the Charleston Office of the South Carolina Protection and Advocacy System for the handicapped. Ms. D'Agusto's testimony was apparently offered to support the proposition that DSS failed to offer the mother adequate rehabilitative services as required under the Rehabilitation Act of 1973, Section 504, 20 U.S.C. Section 794. Ms. D'Agusto is not an expert; she has not been trained as a psychologist or a psychiatrist.
The mother's attorneys also offered testimony of the mother's boyfriend to the effect that they intended to get married and were willing to attend parenting classes together.

*121 I.
Before parental rights may be completely and irrevocably severed, conditions warranting such an action must be shown by clear and convincing evidence. Richberg v. Dawson, 278 S.C. 356, 296 S.E. (2d) 338 (1982). The scope of review of this court includes the authority to review the record and make its own finding of whether clear and convincing evidence supports the termination. South Carolina Department of Social Services v. O'Banner, 291 S.C. 253, 353 S.E. (2d) 151 (Ct. App. 1987).
We have carefully reviewed the entire record of this case and we are convinced that there is an abundance of clear and convincing evidence to support the termination of parental rights of the mother as provided by the appealed order. We therefore reject the mother's contention to the contrary.

II.
The mother next asserts that she was not provided with adequate social and rehabilitative services by DSS and asserts that this is required by Section 20-7-1572(2), Code of Laws of South Carolina (1976), and the Rehabilitation Act of 1973, 29 U.S.C. Sections 701-796i.
The mother's brief also asserts:
If the Court believes Humphreys does not now have sufficient skills with which to care for Vereen, then she should be afforded the opportunity to avail herself of beneficial programs. The statute mandates that Respondent undertake "a reasonable and meaningful effort ... to offer rehabilitative services...." S.C. Code Ann. Section 20-7-1572(2). The Rehabilitation Act of 1973, 29 U.S.C.A. Section 706, et seq. (West 1985 and Cum. Supp. 1976, [sic] mandates that Respondent provide health, social, and welfare services to Humphreys as Respondent would for anyone without her handicap. 45 C.F.R. Section 84.52(a) (1). This simply was not done, and the evidence put forth by Humphreys demonstrates Respondent's failure to comply with the statutes.
*122 The mother's parental rights were terminated in this case pursuant to Section 20-7-1572(6) and not Section 20-7-1572(2). Section 20-7-1572(6) provides that the family court may order the termination of parental rights upon a finding that the parent has a diagnosable mental deficiency and that this condition makes the parent unlikely to provide minimally acceptable care of the child. We have held that there is clear and convincing evidence of record to support the finding of the trial judge to the effect that the mother in this case does have a mental deficiency which makes the mother unlikely to provide minimally acceptable care for the child.
Section 20-7-1572(2) is irrelevant to this appeal since the appealed order was not based upon this statute. And we so hold.
The trial court and this court believe that the mother does not now have and is unlikely to attain sufficient skills to care for the child. We do not, however, construe the Rehabilitation Act of 1973 as mandating that DSS provide parental training for mentally deficient parents. That law was intended to insure that benefits are not denied based upon a handicap. It was not, however, designed to prevent the state from terminating parental rights in an appropriate case such as the one presently before this court. See Matter of Robert Scott T., 86 A.D. (2d) 748, 447 N.Y.S. (2d) 776, appeal dismissed, 56 N.Y. (2d) 506, 453 N.Y.S. (2d) 1025, 438 N.E. (2d) 880, appeal dismissed, 57 N.Y. (2d) 606, 455 N.Y.S. (2d) 1025, 441 N.E. (2d) 568 (1982).

CONCLUSION
For the reasons given above, we affirm the appealed order.
Affirmed.
SANDERS, C.J., and GOOLSBY, J., concur.