[No. G024178. Fourth Dist., Div. Three. Nov. 15, 2000.]

In re ANTHONY P., a Minor.
CATHERINE P., Plaintiff and Respondent, v.
NGOC P., Defendant and Appellant.

**COUNSEL**

Law Offices of Gilbert & Marlowe, Richard C. Gilbert and Diane J. Marlowe for Defendant and Appellant.

Nguyen Hong Nhuan and Tien Van Doan for Plaintiff and Respondent.

Harold La Flamme and Craig E. Arthur, under appointments by the Court of Appeal, for Minor.

**OPINION**

**RYLAARSDAM, J.**—The issue raised by this appeal is whether title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.) (the ADA) preempts a state from terminating the parental rights of gravely disabled persons. While no reported California case has addressed the issue, case authority from around the country has, without exception, held the answer is no. We agree and affirm the judgment.

FACTS

Ngoc P. is a psychiatric patient being treated at Metropolitan State Hospital in Norwalk. First admitted to the facility more than eight years ago, she suffers from schizo-affective disorder. According to her treating physicians, she is unable to provide for her own basic needs, such as food, clothing and shelter. In addition, she engages in self-abusive behavior such

as burning herself with cigarettes, lacks personal hygiene, engages in inappropriate sexual behavior (she trades "favors" with male patients for cigarettes), claims to hear voices, and aimlessly paces the unit. While her doctors have tried the latest medications, they say her prognosis is "very poor" and she will always remain in a locked facility.

Ngoc has a son, Anthony P., who is nine years old. He lives with Ngoc's sister, Catherine P. No one knows who Anthony's father is, and the father's parental rights have been terminated. Although Anthony visits his mother frequently, Ngoc has never taken care of him. Catherine, on the other hand, wants to adopt Anthony, and filed a petition to have him declared free from parental custody and control. (Fam. Code, § 7800 et seq.)

Ngoc opposed the petition. She first moved to dismiss the petition on the ground the proceeding was preempted under title II of the ADA, which prohibits the denial of the state's services, programs, or benefits because of a disability. The court rejected that argument. It emphasized that the purpose of the proceedings was to consider the best interests of the child (see Fam. Code, § 7801 ["This part shall be liberally construed to serve and protect the interests and welfare of the child"]), and the intent of the ADA was not to prevent termination of parental rights in a case where a parent, because of a mental disability, is unable to take care of the child.

Ngoc then contested the proceedings on the merits. While she did not testify, both her treating psychiatrists did. Dr. Trinh testified that Ngoc is unable to take care of herself or Anthony, now or in the foreseeable future, and opined that Ngoc is "preoccupied" with personal needs, such as obtaining cigarettes, and "doesn't care much" about her child. She related as an example when Ngoc was asked how she would take care of Anthony, she responded simply, "I put him in the locker. I just put him away like an object. Put him away." Dr. Vu testified that Ngoc has chronic mental illness. He said she is unable to take care of Anthony, and while there has been "some" improvement in her condition recently, he did not think "her mental illness will be much different from her present status right now even under treatment." Asked whether it would be dangerous to leave Anthony with her, he said, "I don't think I can say it's safe for her to have a child, because she . . . can be unpredictable."

Following the hearing, the court found Ngoc "is mentally disabled . . . and that she suffers a mental incapacity or disorder that renders herself [*sic*] unable to care for and control the child adequately, and she's a person with such a condition who is likely to remain so in the foreseeable future." It further found "it would be in the best interest of the child that the rights of

the mother" be terminated. Based upon these findings, the court freed Anthony from Ngoc's custody and control.

## DISCUSSION

■ Ngoc asserts title II of the ADA preempts states from terminating parental rights of persons who are gravely disabled. She reasons that because mental disorders are disabilities under the ADA and states may not discriminate against disabled persons in the provision of their "services, programs, or activities," (42 U.S.C. § 12132) any statute which permits the termination of parental rights of a mentally disabled person, such as Family Code sections 7826 and 7827, is necessarily preempted by federal law.

Family Code sections 7826 and 7827 provide that where a parent has been declared to be developmentally disabled, mentally ill, or mentally disabled, and "will not be capable of supporting or controlling the child in a proper manner," a proceeding may be brought under Family Code section 7802 "for the purpose of having a minor child declared free from the custody and control of either or both parents." Sections 7826 and 7827 contain specific directions as to the nature and quantum of evidence required to justify such a proceeding.

Title II of the ADA prohibits discrimination in the furnishing of public services by governmental agencies. It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (42 U.S.C. § 12132; see also *Weinrich v. Los Angeles County* (9th Cir. 1997) 114 F.3d 976, 978.) The question, then, is whether a proceeding to terminate parental rights is preempted by the ADA.

Ngoc does not cite any case which has considered the precise point she raised. Indeed, the relevance of the two cases she does cite is obscure. In *Crowder v. Kitagawa* (9th Cir. 1996) 81 F.3d 1480, the court held that Hawaii's requirement that all dogs entering the state had to be quarantined discriminated against visually impaired persons who sought to bring in their guide dogs. In *Helen L. v. DiDario* (3d Cir. 1995) 46 F.3d 325, Pennsylvania was found to have violated the ADA by refusing to modify its programs to allow patients to receive nursing care services in their own home, where appropriate.

Minor's counsel, on the other hand, cites several cases directly on point which are instructive as to the interplay between the ADA and laws which

permit the termination of parental rights. In each case, the court held these types of proceedings are not services, programs, or activities within the meaning of title II of the ADA, and they are therefore not preempted by it. (See *In re B.S.* (1997) 166 Vt. 345 [693 A.2d 716, 720]; *Stone v. Daviess Co. Div. Child Serv.* (Ind.Ct.App. 1995) 656 N.E.2d 824, 830; *In Interest of Torrance P.* (1994) 187 Wis.2d 10 [522 N.W.2d 243, 246].) Our independent research found numerous other cases which reached the same conclusion. (See, e.g., *M.C. v. Department of Children and Families* (Fla.Dist.Ct.App. 2000) 750 So.2d 705 and cases cited therein.) Indeed, in our all-states search for authority on this issue, we did not locate even one case, published or unpublished, that came to a different conclusion.

Because title II incorporates the enforcement provisions of the Rehabilitation Act of 1973, it is also appropriate that cases interpreting that act be considered to provide guidance in interpreting the ADA. The same argument raised in this case was made, and rejected, relative to section 504 (29 U.S.C. § 794) of the Rehabilitation Act of 1973. (See, e.g., *South Carolina Dept. of Social Services v. Humphreys* (1988) 297 S.C. 118 [374 S.E.2d 922, 925]; cf. *Matter of Richard M.* (1981) 110 Misc.2d 1031 [443 N.Y.S.2d 291, 294].)

The mere fact other courts have rejected Ngoc's preemption argument is not a sufficient basis, in and of itself, on which to affirm the order. But in each case, the reviewing court points out that the goal of title II of the ADA is to guarantee that no qualified individual with a disability is denied the benefits of the public entity's services, programs, and activities because of that disability, and that a proceeding to terminate parental rights is not a government service, program, or activity. As the Florida appellate court aptly stated, "dependency proceedings are held for the benefit of the child, not the parent. Therefore, the ADA is inapplicable when used as a defense by the parent(s) in [those] proceedings." (*M.C. v. Department of Children and Families, supra,* 750 So.2d at p. 706.) The parent "may have a separate cause of action under the ADA based on the County's actions or inactions; such a claim, however, is not a basis to attack the [termination] order." (*In Interest of Torrance P., supra,* 522 N.W.2d at p. 246.) We agree with our sister courts, and reject Ngoc's preemption argument.

Ngoc raises two secondary issues which must be addressed. She argues she should have been interviewed by the state's investigating social worker before her parental rights were terminated, and her rights cannot be terminated because no one interviewed the father. Neither argument is persuasive.

She premises her first argument on the theory there is a conflict of interest between her and the hospital staff concerning her care and protection since

she became pregnant while at the hospital. But her premise is wrong. Anthony was born in 1991. Ngoc was first admitted to the hospital in early 1992. Even if Ngoc had been impregnated there, there was sufficient evidence it would have been futile for the social worker to have tried to talk with Ngoc about the petition or the adoption. The social worker conferred with Ngoc's treating physician and social worker and learned that Ngoc did not understand and could not rationally discuss the issues.

Her second argument has even less going for it. Not only does no one know who the father is, Ngoc has no standing to raise his lack of due process in an attempt to defeat the termination of her parental rights. (See *Hensley v. Hensley* (1987) 190 Cal.App.3d 895, 898-899 [235 Cal.Rptr. 684].)

### DISPOSITION

The judgment is affirmed.

Sills, P. J., and O'Leary, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 24, 2001.