[No. C038026. Third Dist. May 8, 2002.]

WILLIAM FRY et al., Plaintiffs and Appellants, v.
RITA SAENZ, as Director, etc., et al., Defendants and Respondents.

**COUNSEL**

Western Center on Law & Poverty, Clare Pastore, Paula Gaber, Richard Rothschild; Legal Aid Society of San Diego, Ann E. Menasche; Legal Services of Northern California and Brian Patrick Lawlor for Plaintiffs and Appellants.

Michelle Uzeta and Melinda Bird for Protection & Advocacy, Inc., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Charlton G. Holland, Assistant Attorney General, Frank S. Furtek and Paul Reynaga, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**SIMS, Acting P. J.**—CalWORKs, which stands for California Work Opportunity and Responsibility to Kids (Welf. & Inst. Code, § 11200),[1] is the renamed and otherwise amended version of California's former Aid to

[1] All undesignated section references are to the Welfare and Institutions Code.

Families with Dependent Children (AFDC) program. (Stats. 1997, ch. 270, § 50; Legis. Counsel's Dig., Assem. Bill No. 1542 (1997-1998 Reg. Sess.); see *Arenas v. San Diego County Bd. of Supervisors* (2001) 93 Cal.App.4th 210, 213-214 [112 Cal.Rptr.2d 845].) Like the former state AFDC, Cal-WORKs is funded in part by its federal counterpart (42 U.S.C. § 601 et seq.), now known as Temporary Assistance for Needy Families (TANF). (§§ 10100-10101, 11200.5.)

CalWORKs is administered by the Department of Social Services (the Department). (§ 11209.) CalWORKs provides aid and services to families with related children under 18 whose parent or parents cannot support them due to death, incapacity, incarceration, unemployment, or continued absence from the home. (§ 11250, subds. (a)-(c).) Section 11253 is the only exception to the cutoff of aid at age 18. (§§ 11250, 11253.)

Section 11253 provides:

"Aid may not be granted under the provisions of this chapter to or in behalf of any child who has attained the age of 18 unless all of the following apply: [¶] (a) The child is less than 19 years of age and is attending high school or the equivalent level of vocational or technical training on a full-time basis. [¶] (b) *The child can reasonably be expected to complete the educational or training program before his or her 19th birthday.*" (Italics added.)

Section 11253, subdivision (b) (hereafter section 11253(b)) is commonly known as the "completion rule."

Defendant Department paid benefits under CalWORKs to plaintiffs William Fry, Marie LaBrash, and Audrey Griffin and their disabled children who were full-time high school students. After the children turned 18 without having completed high school or appearing likely to do so within a year, the Department discontinued benefits based on the completion rule; i.e., because it was unlikely that each child would complete high school by age 19.

Plaintiffs filed a petition for writ of ordinary mandamus (Code Civ. Proc., § 1085) and administrative mandamus (Code Civ. Proc., § 1094.5), seeking a declaration that Welfare and Institutions Code section 11253(b) is unlawful as applied to disabled children and an order reinstating benefits.

Plaintiffs alleged the only reason their children cannot be expected to finish high school before their 19th birthday is because the children are

disabled. Plaintiffs averred that, as applied to their disabled children, the completion rule violates the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.), the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.; hereafter Rehabilitation Act), and California law requiring state-funded programs to comply with those federal statutes (Gov. Code, § 11135). According to plaintiffs, the completion rule unlawfully discriminates against these disabled 18-year-old children by depriving them of a benefit available to similarly situated 18-year-old children who are not disabled.

Following a hearing, the trial court denied the petition and plaintiffs timely appealed.

We agree with plaintiffs that application of the completion rule to their children unlawfully denies them the benefits of the CalWORKs program on account of their disabilities. We shall therefore reverse the judgment and remand the matter to the trial court for the taking of evidence as to the Department's current ability to pay benefits to plaintiffs and others in the state similarly situated.

### FACTUAL AND PROCEDURAL BACKGROUND

At all relevant times, plaintiffs' children were under age 19 and enrolled full time in high school.

The parties have stipulated that the children are disabled within the meaning of the ADA and the Rehabilitation Act and that only their disabilities appeared likely to prevent them from completing high school by the age of 19. Thus, there is no dispute that their benefits were cut off solely due to disability.

Plaintiffs timely appealed the termination of benefits. Plaintiff LaBrash's termination was rescinded and LaBrash withdrew her appeal after her daughter's high school principal informed the Department that the child could be expected to graduate by age 19.[2] After administrative hearings on the remaining appeals, defendant Saenz in her capacity as Director of the Department upheld the terminations under the completion rule. (We shall refer to defendants as the Department for convenience.)

Plaintiffs thereafter filed their writ petition in Sacramento County Superior Court. In a declaration filed in support of the petition, plaintiff Griffin

---

[2]Defendants have stipulated, however, that if a change in the child's school program due to her disability delayed her graduation, her benefits would again be in jeopardy. Defendants do not challenge LaBrash's standing in this appeal.

averred that her child had received $652 per month in Supplemental Security Income (SSI) benefits up until November 2000 and $807 per month thereafter, amounts in excess of the $294 per month Griffin had received under CalWORKs as the child's caretaker parent. The other plaintiffs declared that their children received no benefits other than the discontinued CalWORKs benefits.

After a hearing on the merits, the superior court denied the writ and issued judgment on all claims for defendants. The court found: "The provisions of . . . section 11253(b) constitute an essential eligibility requirement, within the meaning of the ADA and the Rehabilitation Act. The purpose of the CalWORKs program is to provide a nurturing, supportive home for a needy child. The point of demarcation between a child and an adult defines the basic program eligibility parameter with substantive financial consequences. [¶] . . . The relief requested by petitioners would constitute a fundamental alteration of the CalWORKs program . . . within the meaning of the ADA and the Rehabilitation Act."

DISCUSSION

I

*The Trial Court Erred in Concluding That the Completion Rule Was an Essential Eligibility Requirement of CalWORKs*

As the essential facts are undisputed, we have only questions of law before us. ■ In reviewing the denial of a petition for writ of mandamus, whether under Code of Civil Procedure section 1085 or section 1094.5, we review questions of law de novo. (*County of Sonoma v. Commission on State Mandates* (2000) 84 Cal.App.4th 1264, 1278-1279 [101 Cal.Rptr.2d 784]; *Silver v. Los Angeles County Metropolitan Transportation Authority* (2000) 79 Cal.App.4th 338, 347-348 [94 Cal.Rptr.2d 287].)

Government Code section 11135 currently provides in part: "(a) No person in the State of California shall, on the basis of . . . disability, be unlawfully denied . . . the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is . . . funded directly by the state, or receives any financial assistance from the state. [¶] (b) With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and

prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions." ▆▆▆ ▆ ▆ The ADA and the Rehabilitation Act apply to any program or activity which receives TANF funds, such as CalWORKs. (42 U.S.C. § 608(d).)[3]

The ADA provides in part: "Subject to the provisions of this subchapter [(tit. II, 42 U.S.C. § 12131 et seq.)], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (42 U.S.C. § 12132; see also 28 C.F.R. § 35.130(a) (2001).) Similarly, the Rehabilitation Act provides in part: "(a) . . . [¶] No otherwise qualified individual with a disability in the United States, as defined in section 706(20) [29 U.S.C. § 705(20)] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . . [¶] (b) . . . [¶] For the purposes of this section, the term 'program or activity' means all of the operations of [¶] . . . a department . . . of a State . . . government; or [¶] . . . the entity of such State . . . government that distributes such assistance and each such department . . . to which the assistance is extended, in the case of assistance to a State . . . government . . . ." (29 U.S.C. § 794; see also 45 C.F.R. § 84.4(a) (2001).)

Under both the ADA and the Rehabilitation Act, a person "qualified" to receive government benefits or services or to participate in a government program or activity is one who, "with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements" for such benefits, services, or participation. (42 U.S.C. § 12131(2) [ADA]; see also 28 C.F.R. § 35.104 (2001) [implementing ADA]; 28 C.F.R. § 41.32(b) (2001) [implementing Rehabilitation Act].) ▆▆ Plaintiffs contend the trial court erred in finding the completion rule an "essential eligibility requirement" of CalWORKs. Plaintiffs are correct.

Under TANF, a "minor child" qualified to receive benefits is "an individual who—[¶] (A) has not attained 18 years of age; or [¶] *(B) has not attained 19 years of age and is a full-time student in a secondary school (or in the equivalent level of vocational or technical training).*" (42 U.S.C. § 619, italics added.) TANF does not require an eligible child to complete high

---

[3]Title II of the ADA incorporates the enforcement provisions of the Rehabilitation Act and case law construing the Rehabilitation Act provides guidance in construing the ADA. (*In re Anthony P.* (2000) 84 Cal.App.4th 1112, 1116 [101 Cal.Rptr.2d 423]; *Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 749 [100 Cal.Rptr.2d 39].)

school by age 19.[4] Plaintiffs' children, who were under 19 and enrolled full-time in high school when plaintiffs' CalWORKs benefits were cut off, therefore met the "essential eligibility requirements" of the federal statute for receiving TANF funds.

The Department asserts that the completion rule is essential to CalWORKs because, by enacting that rule in a state statute (§ 11253(b)), the Legislature showed that it thought the rule essential. Indeed, the Department says: "The completion requirement was designed by the California Legislature to be an essential component of CalWORKs, *and that decision is controlling.*" (Italics added.) The Department is wrong.

■ A program eligibility requirement which could discriminate against the disabled may be deemed essential only if the program's purposes could not be achieved without the requirement. (See *Alexander v. Choate* (1985) 469 U.S. 287, 300-301 [105 S.Ct. 712, 719-720, 83 L.Ed.2d 661, 671-672]; *Pandazides v. Virginia Bd. of Educ.* (4th Cir. 1991) 946 F.2d 345, 349; *Strathie v. Department of Transp.* (3d Cir. 1983) 716 F.2d 227, 230-231.) If a requirement is not essential in that sense, the fact that it is embodied in a statute rather than a regulation makes no difference. "[I]n virtually all controversies involving the ADA and state policies that discriminate against disabled persons, courts will be faced with *legislative* (or executive agency) deliberation over relevant *statutes*, rules, and regulations." (*Crowder v. Kitagawa* (9th Cir. 1996) 81 F.3d 1480, 1485, italics added.) The courts have a duty to see that "the mandate of federal law is achieved" (*ibid.*), and statutes are no more immune to judicial scrutiny for ADA compliance than are rules or regulations. (*Ibid.*)

Disabled plaintiffs have often brought challenges in federal court to government entities' decisions to deny benefits or services in reliance on rules alleged to be essential eligibility requirements for receiving the benefit or service. (42 U.S.C. § 12131(2).) The federal courts have taken two different approaches to such challenges. Some have looked first to the general purposes of the program and how the rule serves those purposes,

---

[4]Under the former federal-state AFDC regime, states could not impose eligibility requirements beyond those specified in the federal AFDC statutes because to do so would violate the federal supremacy clause. (U.S. Const., art. VI, § 2; see, e.g., *Townsend v. Swank* (1971) 404 U.S. 282, 286 [92 S.Ct. 502, 505, 30 L.Ed.2d 448, 453]; *Bryant v. Swoap* (1975) 48 Cal.App.3d 431, 434 [121 Cal.Rptr. 867].) As we have just explained, section 11253(b) imposes an eligibility requirement beyond that found in its TANF counterpart: the completion rule. However, plaintiffs have not asked us to consider whether the rule of *Townsend v. Swank*, and *Bryant v. Swoap*, remains in effect under TANF, or whether, if so, section 11253(b) would be unconstitutional on its face under that rule. (See *Anderson v. Superior Court* (1998) 68 Cal.App.4th 1240, 1248-1249 [80 Cal.Rptr.2d 891].) We therefore express no view on that issue.

while others have looked first to the characteristics of the individual plaintiff seeking exemption from the rule. Under the former approach, "even if waiver of a rule would be reasonable under the circumstances of the particular case, the waiver would not be required if the rule itself is generally an essential or necessary eligibility requirement." (*Washington v. Indiana High School Athletic Ass'n* (7th Cir. 1999) 181 F.3d 840, 850 (*Washington*).) Under the latter approach, the court asks "whether waiver of the rule in the particular case at hand would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change" in the government program. (*Ibid.*) In some contexts, the choice of approach will decide the outcome. (Compare *Pottgen v. Missouri St. High Sch. Activities Ass'n* (8th Cir. 1994) 40 F.3d 926, 929 (*Pottgen*) [age-18 cutoff was "essential eligibility requirement" of high school sports program because it served program's general purposes] with *id.* at p. 931 (dis. opn. of Arnold, C. J.) [opining waiver of cutoff for plaintiff would not fundamentally alter program].)

Although the court in *Washington, supra*, 181 F.3d 840 held the individual-based approach to be "the better view" (*id.* at p. 850), the federal courts have more often chosen the program-based approach. (See, e.g., *McPherson v. Michigan High School Athletic Ass'n* (6th Cir. 1997) 119 F.3d 453, 461; *Does 1-5 v. Chandler* (9th Cir. 1996) 83 F.3d 1150, 1154-1155; *Sandison v. Michigan High School Athletic Ass'n* (6th Cir. 1995) 64 F.3d 1026, 1034; *Easley v. Snider* (3d Cir. 1994) 36 F.3d 297, 300-304.) One reason for this choice may be the courts' fear that under the individual-based approach "[a] public entity could never know the outer boundaries of its 'services, programs, or activities.' A requirement could be deemed essential for one person with a disability but immaterial for another similarly, but not identically, situated individual." (*Pottgen, supra,* 40 F.3d at p. 931.) ▮ Recognizing the validity of this concern, we shall follow the majority approach and look to the general purposes of CalWORKs, rather than to the individual plaintiffs' characteristics, to determine whether the completion rule is an essential eligibility requirement of the program.

The Legislature has defined the purposes of CalWORKs as follows: "The Legislature finds and declares that the family unit is of fundamental importance to society in nurturing its members, passing on values, averting potential social problems, and providing the secure structure in which citizens live out their lives. Each family unit has the right and responsibility to provide its own economic security by full participation in the work force to the extent possible. Each family has the right and responsibility to provide sufficient support and protection of its children, to raise them according to its values and to provide every opportunity for educational and social progress." (§ 11205.) With these aims in mind, "[e]very county . . . shall

administer this chapter in such a manner as to achieve the greatest possible reduction of dependency and to promote the rehabilitation of recipients." (§ 11207.)[5]

Nothing in these legislatively declared purposes of CalWORKs requires the completion rule as a condition of eligibility for benefits. On the contrary, cutting off benefits under this rule tends to undermine these purposes.

Depriving a family of benefits because a disabled child is not expected to complete high school or job training by age 19 obviously does not enhance the family's "right and responsibility to provide sufficient support and protection of its children." (§ 11205.) Similarly, the cutoff of benefits for this reason does not promote the family's "right and responsibility to provide its own economic security by full participation in the work force to the extent possible" (*ibid.*): a disabled 18 year old with schooling or job training unfinished is ill-prepared to work, and having to care for the child without CalWORKs aid may impede the parents' participation in the work force. Barring a family from receiving benefits because a disabled 18 year old will not complete high school within a year patently detracts from the family's "right and responsibility to . . . provide every opportunity for educational and social progress." (*Ibid.*) Finally, cutting off benefits under these circumstances does nothing to "reduc[e] dependency" or "promote the rehabilitation of recipients" (§ 11207): it leaves disabled children more dependent than before, thus discouraging the "rehabilitation" of all aid recipients.

Though the completion rule is unnecessary to any CalWORKs purpose expressly defined by the Legislature, the Department asserts that the rule is nevertheless essential because CalWORKs is "purposefully targeted to serve needy families with *children*." Similarly, the trial court thought the rule essential "within the meaning of the ADA and the Rehabilitation Act" because "[t]he purpose of the CalWORKs program is to provide a nurturing, supportive home for a needy child. The point of demarcation between a child and an adult defines the basic program eligibility parameter . . . ."[6] The Department's argument and the trial court's ruling are untenable.

---

[5]These purposes closely resemble those declared by Congress for state programs receiving federal funds through TANF: "(1) [P]rovide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives; [¶] (2) end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage; [¶] (3) prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and [¶] (4) encourage the formation and maintenance of two-parent families." (42 U.S.C. § 601(a).)

[6]The last sentence ends: "with substantive financial consequences." The financial consequences of granting relief to plaintiffs relate more closely to the topic of part II, *post*: would refusing effect to the completion rule for persons similarly situated to plaintiffs and their

By enacting section 11253, the Legislature has established the "point of demarcation between a child and an adult" under the statute as age 19: a child who comes within section 11253 is a "child" for purposes of Cal-WORKs up to that age. Plaintiffs seek benefits for their children only until each child reaches age 19. We do not see why an 18 year old who can complete schooling or job training by age 19 should be deemed a "child" up until then, but one who cannot do so because of disability should not be. That distinction has no more bearing on the general purpose of "serving needy families with children" than on any specific purpose stated in sections 11205 and 11207.

The Department cites legislative history related to Congress's enactment of the completion rule *in the former AFDC*, apparently to show that Congress thought the rule essential to that program. But if Congress thought so, its failure to reenact the rule in TANF shows that Congress has changed its mind. If the Department means to argue that our Legislature was bound by Congress's earlier finding, the Department fails to explain why the Legislature is not bound by Congress's later implied finding that no completion rule is appropriate.[7]

Finally, the Department relies on a federal district court decision holding that the completion rule as enacted in a Washington statute was an essential eligibility requirement of that state's AFDC program. (*Aughe v. Shalala* (W.D.Wash. 1995) 885 F.Supp. 1428 (*Aughe*).) We find *Aughe* unpersuasive.

The court in *Aughe* first reasoned that the state could not waive the completion rule because the federal AFDC required it, a rationale which no longer applies. (*Aughe, supra*, 885 F.Supp. at p. 1431.) The court then stated: "The AFDC is designed to help children (i.e.[,] those under eighteen years of age) and their families." (*Ibid.*) As we have explained, this rationale does not justify a rule that distinguishes between two classes of 18-year-old "children." Finally, the court asserted (citing no evidence): "By cutting off aid to those over eighteen the fiscal viability of the AFDC can be maintained." (*Ibid.*) The court's assumption that the fiscal soundness of the AFDC in Washington State depended on the completion rule has no bearing on whether that rule is essential to CalWORKs. As we shall explain in a moment, the fiscal consequences to CalWORKs of eliminating the completion rule for disabled students is a matter that should be tried upon evidence upon remand.

children fundamentally alter CalWORKs? We therefore defer our discussion of this point to part II.

[7]The Department asserts that the Legislature is free to impose conditions in CalWORKs even after Congress has discarded them in TANF, but cites no authority for this proposition. (See fn. 4, *ante*.)

For all the above reasons, we conclude that, on the record before us, the completion rule is not an essential eligibility requirement of CalWORKs.

## II

*The Trial Court Erred in Ruling That It Would Fundamentally Alter the CalWORKs Program to Abrogate the Completion Rule for Disabled Students. However, We Shall Remand to the Trial Court for the Taking of Evidence on the State's Current Ability to Meet the Increased Costs of Funding Benefits to Disabled Students Caused by Abrogation of the Completion Rule*

The trial court concluded, "[t]he relief requested by petitioners would constitute a fundamental alteration of the CalWORKS program . . . within the meaning of the ADA and the Rehabilitation Act." Plaintiffs contend the trial court erred in concluding it would fundamentally alter CalWORKs to abrogate the completion rule as to them. For reasons that follow, we agree that the trial court's conclusion is legally erroneous on the record presented.

However, the Department asserts that to grant relief to plaintiffs and those similarly situated would jeopardize the program's fiscal soundness. As we shall explain, we cannot ascertain on this record whether that is so. Moreover, recent events have dramatically altered our state's economic outlook. Therefore, we shall remand for the taking of evidence on this point.

### A

*Considerations Other Than Fiscal Considerations*

"A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." (28 C.F.R. § 35.130(b)(7) (2001) [implementing ADA].) ■ Under this guideline, "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers. The benefit . . . cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." (*Alexander v. Choate, supra,* 469 U.S. at p. 301 [105 S.Ct. at p. 720, 83 L.Ed.2d at p. 672].)

■ Plaintiffs' children are "otherwise qualified handicapped individuals" for purposes of the ADA, and the completion rule deprives them of a

benefit available to nonhandicapped 18-year-old children in a program to which the ADA applies. Thus, the Department must show that it cannot accommodate plaintiffs' children and those similarly situated by permitting them to obtain that benefit because to do so would fundamentally alter CalWORKs. The Department failed to meet its burden in the trial court.

Relying on *Aughe, supra,* 885 F.Supp. at page 1432, the Department asserts that plaintiffs' remedy would "essentially rewrite the statute," which (apparently by definition) would fundamentally alter CalWORKs. We find *Aughe* no more persuasive on this point than on those discussed in part I, *ante.*

The court in *Aughe* based this part of its analysis solely on *Pottgen, supra,* 40 F.3d 926, which upheld a school sports program's age cutoff against a challenge by an athlete whose disability had kept him in school past the cutoff age. *Pottgen* held that it would fundamentally alter school sports programs to waive the age limit, which serves essential purposes of scholastic athletics (to protect younger athletes and to discourage coaches from seeking unfair advantage by using older athletes, among others). (*Id.* at p. 929.) The only possible accommodation for the plaintiff—to waive the age limit—was therefore not "reasonable." (*Id.* at p. 930.)

*Pottgen*'s analysis, which *Aughe* simply parrots (*Aughe, supra,* 885 F.Supp. at pp. 1431-1432), is inapplicable to section 11253(b). Unlike the age-limitation rule in athletics, which prevents older youths from competing unfairly with younger youths, elimination of the completion rule in this case would not result in disabled students competing unfairly in academics with younger students. As shown in part I, *ante,* the Department identifies no essential purpose of CalWORKs incompatible with paying benefits to otherwise qualified children whose disabilities may keep them from completing high school by age 19. It does not rewrite the statute to refuse effect to an inessential condition which unlawfully discriminates against the disabled.

The Department next asserts that plaintiffs' remedy would fundamentally alter CalWORKs by "expanding" its coverage. (See *Bay Area Addiction Research v. City of Antioch* (9th Cir. 1999) 179 F.3d 725, 734 (*BAART*).) The Department is mistaken and its reliance on *BAART* is misplaced.

In *BAART,* the court held that a city zoning ordinance which barred methadone clinics within 500 feet of residential areas discriminated on its face against persons who came within the ambit of the ADA and the Rehabilitation Act. (*BAART, supra,* 179 F.3d at pp. 729-730, 733-734.) Explaining that the "reasonable modifications" requirement under 28 Code of Federal Regulations section 35.130(b)(7) (2002) did not apply, the court

stated: "The only possible modification of a facially discriminatory law that would avoid discrimination on the basis of disability would be *the actual removal of the portion of the law that discriminates on the basis of disability*. However, such a modification *would fundamentally alter the ordinance*. As applied to this case, for example, the urgency ordinance could only be rendered facially neutral *by expanding* the class of entities that may not operate within 500 feet of a residential neighborhood to include all clinics at which medical services are provided, or by striking the reference to methadone clinics entirely." (*BAART*, at p. 734, italics added.)

Without discussing *BAART*'s subject or holding, the Department quotes only the portion of *BAART*'s language we have italicized. In context, that language does not support the Department's proposition that a reasonable accommodation which "expand[s] coverage" under a facially neutral program, so as to avoid as-applied discrimination against qualified individuals, fundamentally alters the program. Nor does any other decision the Department cites.

To the extent that *BAART* might suggest that a court may not order a public program that unlawfully excludes the disabled to disregard exclusionary language in a statute or ordinance, we respectfully decline to follow it. It remains true that whenever a public program is altered to embrace the disabled who have been excluded on account of their disabilities, the program is expanded. That is no reason to refuse to apply the anti-discrimination mandates of the ADA or the Rehabilitation Act. Indeed, to accept the Department's argument would eviscerate remedies for disability discrimination under those acts.

The Department further asserts: "[T]he present rule contained in Section 12253(b) [*sic*: 11253(b)] is itself a reasonable accommodation for all children who have reached the usual graduation cutoff age of 18, but need additional time to complete school for whatever reason, including disability." Not only does this conflict with the Department's position that no reasonable accommodation for plaintiffs' children is possible, but it misuses the term "reasonable accommodation." By definition, that term means an accommodation offered to disabled persons. (*Alexander v. Choate, supra*, 469 U.S. at p. 301 [105 S.Ct. at p. 720, 83 L.Ed.2d at p. 672]; 28 C.F.R. § 35.130(b)(7) (2001).) Nondisabled 18 year olds who "need additional time to complete school" do not require reasonable accommodation under the ADA. Thus it makes no sense to describe section 11253(b) as a reasonable accommodation for 18 year olds in general.

We therefore conclude that the trial court erred as a matter of law by concluding, on the record presented to it, that plaintiffs' proposed remedy would fundamentally alter CalWORKs.

B

*The Fiscal Impact of Plaintiffs' Remedy*

This leaves the question of fiscal impact, however. The Department asserts that to grant relief to plaintiffs would fundamentally alter CalWORKs by requiring large-scale additional expenditures. We cannot resolve this contention on the record before us.

Both the ADA and the Rehabilitation Act, as construed by the United States Supreme Court, recognize that public entities need not make unreasonable expenditures of public funds to provide services covered by the acts. Therefore, if such expenditures would be required to grant relief to plaintiffs and others similarly situated, the courts cannot compel the state to provide the benefits plaintiffs seek.

In *Olmstead v. L.C.* (1999) 527 U.S. 581 [119 S.Ct. 2176, 144 L.Ed.2d 540], the Supreme Court interpreted 28 Code of Federal Regulations section 35.130(b)(7) (2001), implementing the ADA, which provides (as noted): "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, *unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity.*" (Italics added.) The court held:

"The State's responsibility, once it provides community-based treatment to qualified persons with disabilities, is not boundless. The reasonable-modifications regulation speaks of 'reasonable modifications' to avoid discrimination, and allows States to resist modifications that entail a 'fundamenta[l] alter[ation]' of the States' services and programs. [Citation.] The Court of Appeals construed this regulation to permit a cost-based defense 'only in the most limited of circumstances,' [citation], and remanded to the District Court to consider, among other things, 'whether the additional expenditures necessary to treat [the plaintiffs] in community-based care would be unreasonable given the demands of the State's mental health budget' [citation].

"The Court of Appeals' construction of the reasonable-modifications regulation is unacceptable[,] for it would leave the State virtually defenseless once it is shown that the plaintiff is qualified for the service or program she seeks. If the expense entailed in placing one or two people in a community-based treatment program is properly measured for reasonableness against the State's entire mental health budget, it is unlikely that a State, relying on the

fundamental-alteration defense, could ever prevail. [Citations.] Sensibly construed, the fundamental-alteration component of the reasonable-modifications regulation would allow the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities." (*Olmstead v. L.C., supra,* 527 U.S. at pp. 603-604 [119 S.Ct. at pp. 2188-2189, 144 L.Ed.2d at pp. 559-560].)

The Supreme Court has found a similar concern for unreasonable public expenditures under the Rehabilitation Act. In *School Bd. of Nassau County v. Arline* (1987) 480 U.S. 273 [107 S.Ct. 1123, 94 L.Ed.2d 307], the court held that under this act "[a]ccommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, [citation], or requires 'a fundamental alteration in the nature of [the] program.' " (480 U.S. at p. 287, fn. 17 [107 S.Ct. at p. 1131, 94 L.Ed.2d at p. 321]; see 45 C.F.R. § 84.12(c) (2001), which provides: "In determining . . . whether an accommodation would impose an undue hardship on the operation of a recipient's program, factors to be considered include: . . . [¶] (3) The nature and cost of the accommodation needed.")

Unlike the arguments discussed in part II.A., *ante,* the Department's argument that the relief plaintiffs seek would require unreasonable public expenditures raises a factual question. We cannot answer that question because the factual record has not been developed and the economic circumstances of the State have changed dramatically since trial.

Citing exhibits presented below, plaintiffs assert: (1) the cost of "modifying" the completion rule as they wish "would likely average at most only .34 percent of California's welfare payments;" (2) although this might come to $10 million a year, that cost could easily be paid out of a $1.5 billion surplus of available TANF block grant funds the State has not yet sought. The Department accepts plaintiffs' cost estimate for the sake of argument but asserts that there is no remaining TANF block grant balance or surplus out of which to pay that cost. The Department requests judicial notice of a purported excerpt from the Governor's budget for fiscal year 2001-2002 as revised in May 2001, prepared and published by the Department. (Evid. Code, §§ 452, subds. (c) & (h), 459.) According to the Department, this document contains information on California's use of TANF block grant funds.

We deny the request for judicial notice. We frankly cannot make much sense of the document. The Department will have the opportunity to present the document to the trial court and argue its significance on remand.

The record on appeal is inadequate to assess the costs of getting rid of the completion rule for disabled students. Moreover, pursuant to Evidence Code sections 452, subdivisions (g) and (h) and 459, we take judicial notice that the terrible events of September 11, 2001, have dramatically changed the State's fiscal outlook.[8] We shall therefore remand the matter to the trial court for the parties to present evidence on this issue.

■ In the trial court, the Department shall have the burden of persuasion that plaintiffs' proposed modification of CalWORKs would impose an undue financial hardship on the state. Thus, 28 Code of Federal Regulations section 35.130(b)(7) (2001) says: "A public entity shall make reasonable modifications . . . *unless the public entity can demonstrate* that making the modifications would fundamentally alter the nature of the services, program, or activity." (See also *Olmstead v. L.C., supra,* 527 U.S. at pp. 603-604 [119 S.Ct. at pp. 2188-2189, 144 L.Ed.2d at p. 560].) But in meeting its burden, the Department may present evidence of the costs not only as to the plaintiffs herein, but as to all persons similarly situated. (*Ibid.*) Therefore the trial court is directed on remand to consider the cost of accommodating plaintiffs and all other persons in the state similarly situated.

### III

*The Department Has Not Shown That CalWORKs Benefits Can Be Denied to Plaintiff Griffin Because Her Child Received SSI Benefits in Excess of the CalWORKs Benefits.*

Without citing authority, the trial court suggested during oral argument that alternative programs such as SSI may provide benefits to disabled special education students who are not qualified children under section 11253(b). It is undisputed that the child of plaintiff Griffin received SSI benefits, both before and after CalWORKs benefits were cut off, in an amount greater than the CalWORKs benefits.

In this court, the Department makes no argument that plaintiff Griffin can be denied CalWORKs benefits because her child receives SSI. Accordingly, we have been cited no CalWORKs statute or regulation that denies CalWORKs benefits where an eligible child also receives SSI. Nor has our independent research disclosed any.

■ In the absence of a statute or regulation in the CalWORKs program denying benefits upon receipt of SSI, we see no principled basis upon which

---

[8]Pursuant to Evidence Code section 455, we have given the parties the opportunity to comment on our taking judicial notice.

plaintiff Griffin can be denied benefits. As we have recounted, the ADA outlaws denial of "the benefits of the . . . *programs* . . . of a public entity" by reason of the disability of a qualified individual. (42 U.S.C. § 12132, italics added.) Similarly, the Rehabilitation Act provides that, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be denied the benefits of . . . any *program* . . . receiving Federal financial assistance . . . ." (29 U.S.C. § 794, italics added.)

The two federal acts are therefore aimed at the denial of benefits of a *program*. As we have said, we have found no statute or regulation in the CalWORKs *program* that denies benefits where a child receives SSI. Although this court doubtless has the authority to mandate the Department to disregard the completion rule, in order to ensure compliance with the ADA and the Rehabilitation Act, this court has no authority to rewrite the CalWORKs program willy nilly so as to create an exception for children who receive SSI. That is the proper job of the Legislature; the Department does not contend otherwise. Taking the CalWORKs *program* as established by the Legislature, we see no basis to deny benefits to plaintiff Griffin on the ground her disabled child receives SSI.

### DISPOSITION

The judgment denying reinstatement of benefits is reversed. The matter is remanded to the trial court to take evidence on the fiscal impact of plaintiffs' proposed remedy as applied to plaintiffs and others in the state similarly situated. Plaintiffs are awarded their costs on appeal.

Raye, J., concurred.

**HULL, J.**—I concur in the result.

The law in this area is a quagmire; there is no firm ground beneath one's feet. I agree only that we should remand this matter to the trial court for further evidence and a more complete record. I do so with some reluctance and I write separately to express my reservations.

Even though this mandamus action is brought on behalf of only three petitioners, its reach, if successful, will presumably extend to any person whose education has been delayed at any time by virtue of their having suffered a disability. On this record, that population is unknown and therefore the cost to the state of a decision in petitioners' favor is unknown. I am willing to return the matter to the trial court to allow the parties to present evidence on this issue, but I suspect that the number of people affected by a

ruling in petitioners' favor is not only unknown but unknowable, either this year, or in future years. I doubt that it is possible to judge accurately, or to even make an informed estimate of, the fiscal impact of a ruling that bars application of the completion rule to an unknown number of persons. And, if that number is as large as I think it may be, a ruling in petitioners' favor may well have the practical effect of, essentially, writing the completion rule out of the statute. However, caution suggests we should have a record that more fully explores that issue, and for that reason I agree the matter should be returned to the trial court.

The majority remands the matter to the trial court "to consider the cost of accommodating plaintiffs and all other persons in the state similarly situated." (Maj. opn., *ante*, at p. 273.) To comply with this remand order the trial court will be required to consider, in part, the definition of a "disability."

Code of Federal Regulations, title 28, section 35.104 (hereafter section 35.104) defines "disability" with respect to an individual as "a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; a record of such an impairment; or being regarded as having such an impairment." (§ 35.104 (2002).)

Section 35.104 defines "physical or mental impairment" as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine" or "[a]ny mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." (§ 35.104 (2002).)

Section 35.104 also provides that "[t]he phrase physical or mental impairment includes, but is not limited to, such contagious and noncontagious diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism." (§ 35.104 (2002).)

If we are guided, as I think we should be, by the United States Supreme Court's holdings in *Olmstead v. L. C.* (1999) 527 U.S. 581 [119 S.Ct. 2176, 144 L.Ed.2d 540] and *School Bd. of Nassau County v. Arline* (1987) 480 U.S. 273 [94 L.Ed.2d 307, 107 S.Ct. 1123], the trial court must decide from the evidence presented the number of persons in the State of California who will

be unable to complete high school before age 19 due to a disability. The trial court will then have to determine the cost of continuing those person's benefits to age 19 and decide whether, given the resources available to CalWORKS, that cost imposes an undue financial burden on the program. If it does, the requested accommodation is not reasonable and is not required by the Americans with Disabilities Act.

I have difficulty understanding how we can determine whether the accommodation sought by petitioners will impose an undue financial burden on the state when one cannot know how many people are entitled to that accommodation, or how many people will be entitled to that accommodation in the future. We may be requiring the state to prove what cannot be proven.

I note also that the financial burden of the requested accommodation may be greater, or less, in a given fiscal year, depending on the number of people who qualify for it and depending also on the state's and the CalWORKS program's resources. What is "undue" may well change from year to year. If the Americans with Disability Act requires this accommodation, except where it imposes an undue financial burden, must the task of determining that burden become an annual exercise? Will the completion rule be applicable to those with disabilities in some years but not in others? Given the majority opinion's analysis of the issue before us, those results seem logically to follow.

For all of these reasons, I am inclined to defer to the Legislature's implied determination that the completion rule is an essential eligibility requirement for the CalWORKS program, that is, the program's purposes cannot be achieved without the rule. But I am willing to wait for a complete record and consider what that record might show. I agree with the remand.