BRYAN, Judge.
J.K. (“the father”) appeals from a judgment of the Jefferson Juvenile Court (“the juvenile court”) that terminated his parental rights to two of his children, K.K., a girl born in December 1999, and D.K., a girl born in February 2001 (hereinafter referred to collectively as “the children”).
On March 24, 2004, the Jefferson County Department of Human Resources (“DHR”) filed petitions alleging that the children were dependent. In those petitions, DHR alleged that Je.K. (“the mother”) did not take medication to control her mental illness, that domestic violence had occurred between the mother and the father, and that the mother was concerned that the father had sexually abused the children. On March 30, 2004, the children were found dependent as to the mother only based on a stipulation. However, due to the fact that there were criminal charges pending against the father, “all parties” were restrained from allowing contact between the children and the father, and physical custody of the children was awarded to S.R. (“the maternal grandmother”). On August 20, 2004, the juvenile court entered an order finding the children dependent as to the father; however, the juvenile court awarded physical *837 custody of the children to the father.[1] In an amended judgment, the juvenile court ordered both the mother and the father to submit to a psychological evaluation, to participate in counseling, and to maintain suitable housing and employment.
The record indicates that the children made further allegations of sexual abuse against the father, and on March 25, 2005, when K.K. was five years old and D.K. was four years old, the juvenile court found the children dependent and granted custody of the children to DHR. The mother and the father were awarded visitation with the children, supervised by DHR. The children were never returned to the custody of the mother or the father.
At the termination-of-parental-rights hearing in December 2011, Tessa Terrell, a caseworker with DHR who had been involved in this case since 2005, testified that DHR had asked the father to complete parenting classes, attend counseling, complete a psychological evaluation, and participate in drug testing. Terrell testified that, as of December 2011, the father had not completed any of those goals. The father claimed that he had completed those goals but could not offer any evidence to support his claims.
On May 17, 2005, the attorney who had been appointed to represent the father filed a motion to withdraw and requested that another attorney be appointed on the father’s behalf. The juvenile court granted that motion on May 18, 2005.. Although there is no order appointing another attorney for the father in the record, the record indicates that the father had an attorney present at the next hearing before the juvenile court on October 3, 2005.[2]
On October 21, 2005, B.N., the great-aunt of the children, and E.N., the great-uncle of the children, filed a motion to intervene and a petition for custody of the children.[3] On January 5, 2006, the juvenile court entered a judgment indicating that the father was present with an attorney at a dispositional hearing that was conducted on January 4, 2006. Pursuant to that judgment, custody of the children remained vested with DHR and the parties were restrained from allowing any contact between the children and the father.
During the ore tenus hearing in December 2011, the father testified that, upon the advice of his attorney, he did not come back to court for almost three years. It was undisputed that the father did not visit or contact the children from January 2006 through January 2010 and that he did not provide any financial or material support for the children during that time. However, the record indicates that the father’s absence was not the result of the no-contact order because, at the final hearing in December 2011, the father claimed that he did not know there was a no-contact order entered until late 2010. Terrell testified that she had no contact with the father from 2006 through 2010. The record indicates that, at some point in 2006, the father moved from Trussville to Missouri.
*838 On April 28, 2006, the juvenile court entered a judgment after conducting a permanency/dispositional hearing. The father was not present, but his attorney was present. The judgment left the no-contact order in place. The juvenile court entered another judgment on October 20, 2006, which indicated that neither the father nor an attorney for the father was present at a permanency/dispositional hearing conducted on October 17, 2006. The judgment stated that the father had not submitted to a psychological evaluation as ordered. The no-contact provision of the January 2006 judgment was continued, and no other changes were made. Another judgment was entered on December 9, 2006, after a permanency hearing. There is no indication in the record that the father or an attorney representing the father was present at that hearing. No changes to previous orders were made. On April 13, 2007, E.N. and B.N. withdrew their petition for custody of the children. Another disposi-tional/permanency hearing was conducted on September 26, 2007, and a subsequent judgment awarded physical custody of K.K. to the maternal grandmother, but custody of D.K. remained vested in DHR. The juvenile court continued the no-contact order between the father and the children. Terrell testified that D.K. and K.K. had to be placed in separate homes because they were acting out sexually with one another.
On October 4, 2007, DHR filed a petition to terminate the parental rights of the mother and the father to the children. On February 4, 2008, the maternal grandmother relinquished custody of K.K. to DHR. On August 28, 2008, B.N. filed another motion to intervene and requested custody of the children. On October 8, 2008, the juvenile court conducted a dispo-sitional hearing and subsequently awarded physical custody of K.K. to B.N. and E.N., who are residents of Missouri. The juvenile court awarded the father supervised visitation with K.K. There is no indication that either the father or an attorney on his behalf was present at the hearing. On December 19, 2008, the juvenile court entered an order appointing an attorney to represent the father, and the termination-of-parental-rights hearing was scheduled for April 2009.
On April 13, 2009, the juvenile court conducted a pretrial hearing at which the father’s attorney, but not the father, was present, and the juvenile court subsequently entered a judgment awarding the father supervised visitation with the children. The juvenile court conducted another permanency/dispositional hearing on January 4, 2010. At that hearing, DHR made an oral motion to be relieved of its duty to make reasonable efforts to reunite the children with the father due to abandonment. The juvenile court granted that motion in a judgment dated January 5, 2010. The judgment indicates that the father was not present at the January 4, 2010, hearing but that his attorney was present. The judgment noted that service by publication had been perfected on the father and that the father had abandoned the children because he had not had any significant contact with the children for a period of over four months. The juvenile court again entered a no-contact order between the children and the father. The father was ordered to pay child support in the amount of $237 a month beginning on February 1, 2010. The juvenile court awarded physical custody of D.K. to E.N. and B.N. The judgment noted that it was entered over the objection of the father’s attorney.
At the final hearing in December 2011, the father and B.N. testified that B.N. had allowed the father to visit the children approximately four times in violation of the trial court’s January 2010 no-contact order *839 in January and part of February 2010. B.N. claimed that she closely supervised the children during their visits with the father. The record reveals that the father had remarried and had three children with his wife in Missouri. The record indicates that K.K. received an injury to her face while living in Missouri and that she had accused the father’s wife of causing the injury. Based on that allegation, DHR began investigating the incident and apparently learned that B.N. had allowed the father to have contact with the children in violation of the juvenile court’s January 2010 order. The record indicates that the children were returned to Alabama in late October 2010 and placed in foster care. According to Terrell, upon their return to Alabama, the children made allegations of sexual abuse perpetrated against them by the father, E.N., and B.N. The children stated that the father had touched their “private area,” that E.N. and B.N. had forced the children to watch them have intercourse, and that E.N. and B.N. had forced K.K. to have intercourse with her eight-year-old half brother who was in the custody of E.N. and B.N.
On October 22, 2010, the father filed a motion for visitation with the children. On November 30, 2010, E.N. and B.N. filed a third motion to intervene and a petition for custody of the children. On January 12, 2011, the father filed a second motion for visitation with the children, alleging that his first motion had been held in abeyance while he waited for information from Missouri’s child-protective service. On March 15, 2011, the juvenile court entered an order awarding the father visitation with the children that was to be “strictly supervised” by DHR “to be set up as soon as possible.”
On May 2, 2011, the father filed a motion for visitation, indicating that DHR had not scheduled a time for him to visit with the children. The father filed an identical motion for visitation on July 5, 2011. DHR subsequently filed a motion to suspend the father’s visitation with the children in light of the fact that, during counseling in Alabama, the children had disclosed sexual abuse perpetrated by the father, E.N., and B.N. while the children were living in Missouri. After conducting a hearing, the juvenile court granted DHR’s motion on August 12, 2011. On the same day, the case was transferred to a different juvenile-court judge.
The juvenile court conducted an ore ten-us hearing on DHR’s petition to terminate the parental rights of the mother and the father on December 5 and 6, 2011. At the conclusion of the final hearing, E.N. and B.N. withdrew their request for custody of the children. On February 6, 2012, the juvenile court entered an order terminating the parental rights of the mother and the father to the children. The juvenile court found the children dependent pursuant to § 12-15-102(8), Ala.Code 1975; found that the mother and the father had failed to provide for the material needs of the children, had failed to maintain regular visitation with the children, had failed to maintain consistent contact or communication with the children, and had failed to provide for the care and maintenance of the children pursuant to § 12-15-319(a), Ala.Code 1975; found that the father and the mother were unable to discharge their responsibilities to and for the children; found that the conduct and condition of the father and the mother was such as to render them unable to properly care for the children and that such conduct or condition was unlikely to change in the future; found that the father had failed to abide by the orders of the juvenile court; and found that the father had an open case concerning abuse and/or neglect of his other children in Missouri. In addition, the juvenile court found, pursuant to § 12 — 15—819(b), *840 Ala.Code 1975, that the father had abandoned the children for a period of more than four months and that DHR had been relieved of its duty to make reasonable efforts to reunite the father and the children on January 4, 2010. The juvenile court also found that the father had made no effort to adjust his circumstances to meet the needs of the children in accordance with agreements reached with DHR and the orders of the juvenile court. Finally, the juvenile court found that there were no suitable relative resources willing or able to take custody of the children and that there were no viable alternatives to terminating the father’s parental rights. Without filing a postjudgment motion, the father timely filed a notice of appeal.[4]
Our standard of review of a judgment terminating parental rights is well settled. “A juvenile court’s factual findings, based on ore tenus evidence, in a judgment terminating parental rights are presumed to be correct and will not be disturbed unless they are plainly and palpably wrong.” J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala.Civ.App.2007). However, a trial court’s application of the law to undisputed facts is not given a presumption of correctness on appeal, and this court applies a de novo standard of review to questions of law. See J.A. v. C.M., 93 So.3d 953, 954 (Ala. Civ.App.2012).
On appeal, the father first argues that the juvenile court lost subject-matter jurisdiction to rule on DHR’s petition to terminate his parental rights when the Child Protection Act of 1984 (“the CPA”), see former 26-18-1, Ala.Code 1975, was repealed and replaced by the Alabama Juvenile Justice Act (“the AJJA”), § 12-15-101 et seq., Ala.Code 1975, effective January 1, 2009. He contends that the juvenile court did not have jurisdiction to enter the judgment terminating his parental rights because DHR filed its petition to terminate his parental rights while the CPA was in effect, but the judgment terminating his parental rights was not entered until after the CPA had been repealed by the AJJA. He further contends that the juvenile court was without jurisdiction to enter the judgment because the AJJA does not contain a “saving provision for actions commenced under the [CPA].” We disagree as to all the father’s arguments.
Initially, we note that no provision of the CPA conferred jurisdiction upon a juvenile court to rule on a petition to terminate parental rights. In October 2007, when DHR filed a petition to terminate the father’s parental rights, former Ala.Code 1975, § 12 — 15—30(b)(6), conferred exclusive original jurisdiction upon the juvenile courts to conduct termination-of-parental-rights proceedings. Section 12-15-30(b)(6) was amended and renumbered by Act 2008-277, § 3, codified as § 12-15-114, Ala.Code 1975, part of the AJJA, effective January 1, 2009. Like former § 12-15-30(b)(6), § 12-15-114(e)(2), Ala.Code 1975, confers upon the juvenile courts exclusive original jurisdiction over proceedings for termination of parental rights. Although the statute providing the juvenile courts exclusive original jurisdiction over proceedings for termination of parental rights was amended and renumbered by the AJJA while DHR’s petition in this case was pending, the juvenile court never lost subject-matter jurisdiction to hear DHR’s petition to terminate the father’s parental rights. The father cites Coker v. Fountain, 200 Ala. 95, 95, 75 So. 471, 471 (1917) *841 (quoting Railroad Co. v. Grant, 98 U.S. 898, 401, 25 L.Ed. 281 (1878)), for the proposition that “ ‘if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law.’ ” However, as noted above, § 12-15-30(b)(6) was amended and renumbered, i.e., replaced by § 12-15-114(c)(2). Accordingly, there was never a time that the juvenile court did not have subject-matter jurisdiction to rule on DHR’s petition to terminate the father’s parental rights.
Next, the father argues that the juvenile court incorrectly applied the law to the facts because it applied the provisions of the AJJA instead of the provisions of the CPA in the judgment terminating his parental rights. Although the record indicates that the father is correct in stating that the juvenile court applied the AJJA to DHR’s petition, we cannot consider his argument because the father is raising it for the first time on appeal. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (this court may not consider arguments that are presented for the first time on appeal).
The father also contends that several of the juvenile court’s specific findings of fact are not supported by the evidence. Within that argument, the father contends that the juvenile court erred by failing to provide him with court-appointed counsel throughout the dependency and termination-of-parental-rights proceedings. In his reply brief, the father concedes that he did not raise this argument below. However, he argues that the juvenile court’s error should be considered because the juvenile court’s conclusion that he failed to provide for the care, maintenance, and support of the children is inequitable in light of the fact that he did not have a court-appointed attorney telling him to support the children. We disagree. It was undisputed that the father had not provided any support or maintenance for the children during the six and one-half years that the children were out of his custody, and, during most of the time in question, the father was represented by an attorney. Furthermore, the father testified that he purchased a tree-removal business in 2006 when he moved to Missouri and that, up until 2011, business had been “real[ly] good” and he had earned approximately $35,000 a year. Thus, the juvenile court could have concluded that the father had the ability to pay some form of support from 2006 through 2010 and that he did not do so.
The father also argues that the juvenile court’s finding that he had voluntarily abandoned the children because he had no meaningful contact with the children for a period of more than four months is “legally insufficient.” He argues that the applicable law, i.e., the CPA, required a finding of abandonment for a period of six months.[5] The father makes the same argument that was addressed above — that the juvenile court erred by applying the provisions of the AJJA instead of the provisions of the *842 CPA — and, as we did before, we decline to further consider the argument because the father failed to raise it below. See Andrews, supra.
The father further argues that the juvenile court’s findings that he had abandoned the children were not supported by the evidence because the record indicated that he was under a no-contact order for more than six months next preceding the filing of the petition to terminate his parental rights. Thus, he contends, both the January 2010 finding of abandonment and the February 2012 finding of abandonment, as well as the juvenile court’s finding that he had failed to maintain consistent contact and regular visitation with the children, are erroneous. Even if we assume, without deciding, that those findings are erroneous because of the no-contact order, despite the fact that the father admitted that he went approximately four years without contacting DHR or the children when he was supposedly unaware that a no-contact order had been entered, the juvenile court made other findings of fact that are supported by clear and convincing evidence in the record that provide two independent bases for affirming the juvenile court’s judgment terminating the father’s parental rights.[6]
In determining whether to terminate parental rights, a juvenile court is required to apply a two-prong test: “(1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights.” B.M. v. State, 895 So.2d 319, 331 (Ala.Civ.App.2004) (citing Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990)). The juvenile court, for a finding of dependency, must consider whether there are grounds for terminating a parent’s parental rights. K.A.P. v. D.P., 11 So.3d 812, 817 (Ala.Civ.App.2008).[7]
Section 12-15-319, Ala.Code 1975, provides the statutory grounds for terminating a parent’s parental rights and states as follows:
“(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate *843 the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following....”
Section 12-15-319 then provides a list of 12 numbered subsections to be considered by the juvenile court. Subsection (1) allows the juvenile court to consider whether the father abandoned the children; subsection (9) allows the juvenile court to consider whether the father failed to provide for the material needs of the children or to pay a reasonable portion of support for the children, where the father was able to do so; subsection (10) allows the juvenile court to consider whether the father failed to maintain regular visits with the children; subsection (11) allows the juvenile court to consider whether the father failed to maintain consistent contact or communication with the children; and subsection (12) requires the juvenile court to consider whether the father demonstrated a lack of effort to adjust his circumstances to meet the needs of the children in accordance with agreements reached with DHR. See § 12-15-319(a)(l), (9), (10), (11), and (12).[8]
In its judgment, the juvenile court found that the father’s parental rights were due to be terminated because the father was unable or unwilling to discharge his responsibilities to and for the children. To support that finding, the juvenile court made findings of fact consistent with subsections (1), (9), (10), (11), and (12) of § 12-15-319(a), listed above. However, on appeal, the father argues that the juvenile court’s findings related to only subsections (1), (9), (10), and (11) are unsupported by the evidence. We have already concluded that there was clear and convincing evidence to support a finding that, pursuant to subsection (9), the father had failed to provide for the material needs of the children or to pay a reasonable portion of support for the children when he was able to do so for a period of at least four years.
Furthermore, the father does not argue that there was insufficient evidence to support the juvenile court’s finding pursuant to subsection (12), i.e., that the father made no effort to adjust his circumstances to meet the needs of the children in accordance with agreements reached with DHR. Terrell testified that, in almost seven years that she had been involved with the family, the father had not complied with DHR’s requirements that he obtain a psychological evaluation, submit to drug testing, or participate in counseling and parenting classes. The juvenile court was well within its discretion to believe Terrell’s testimony over the father’s testimony to the extent that he disputed Terrell’s testimony. See J.C. v. State Dep’t of Human Res., supra. Accordingly, even without considering the specific findings in the judgment that are challenged by the father on appeal, we conclude that there was clear and convincing evidence to support the juvenile court’s order terminating the father’s parental rights pursuant to § 12-15-319(a)(9) and (12).
Finally, the father argues that the juvenile court’s finding that the father had an open case concerning abuse/neglect of his children in Missouri was not competent evidence to support a judgment terminating his parental rights because that evidence was hearsay and was admitted for dispositional purposes only. One e-mail from a foster-care worker in Missouri to Terrell that was submitted into evidence *844 indicates that there was a pending investigation of the father based on an allegation that he had sexually abused his three-year old daughter. Even if we conclude that it was error for the juvenile court to consider that information in determining whether to terminate the father’s parental rights, as discussed above, there were two other independent grounds for terminating the father’s parental rights. Accordingly, the judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The juvenile court noted in its judgment that the domestic-violence charges pending against the father had been dismissed and that an investigation of allegations of sexual abuse by the father had been "unsubstantiated.”

. At the final hearing in December 2011, the father indicated that he had hired an attorney to represent him in the dependency proceeding. However, there is no notice of appearance filed by that attorney in the record.

.B.N. and E.N. are the aunt and uncle of the father. The record indicates that the father was raised by B.N.

. The mother testified at the final hearing that she was not seeking custody of the children, and she did not file a notice of appeal.

. Former § 26-18-7(b), Ala.Code 1975, provided a rebuttable presumption that a parent was unwilling or unable to act as a parent if the parent abandoned the child for a period of six months next preceding the filing of a petition to terminate parental rights. Section 12-15 — 319(b), Ala.Code 1975, part of the AJJA, modified former § 26-18-7(b) so that that rebuttable presumption is created when a parent abandons a child for a period of four months next preceding the filing of a petition to terminate parental rights. However, the CPA had, and the AJJA has, a provision that allows a juvenile court to consider abandonment as a ground for terminating parental rights absent consideration of a specific period of abandonment. See former § 26-18-7(a)(1), Ala.Code 1975, and § 12-15-319(a)(1), Ala.Code 1975.

. The father also argues that the January 5, 2010, judgment finding that he had abandoned the children was void for want of due process because he was not given notice that DHR would attempt to adjudicate a finding of abandonment at that hearing. Even if we assume that the January 5, 2010, judgment is void insofar as it found that the father had abandoned the children, we can still affirm the juvenile court’s judgment on the independent bases, discussed infra. Furthermore, the father does not argue on appeal that DHR had a duty to make reasonable efforts to rehabilitate him and that it failed to do so. See Brown v. Wal-Mart Stores, Inc., 864 So.2d 1100, 1104 (Ala.Civ.App.2002) ("We will not reverse a trial court's judgment based ... on arguments not made to this court.”).

. In the final judgment, the juvenile court found the children dependent, found clear and convincing evidence to support statutory grounds for terminating the father’s parental rights, and found that .there were no viable alternatives to terminating the father's parental rights. The father does not challenge the juvenile court’s finding of dependency or its finding that there were no viable alternatives to terminating his parental rights. Accordingly, those arguments are waived. See Gary v. Crouch, 923 So.2d 1130, 1136 (Ala.Civ.App.2005) (”[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived.”).

. For purposes of comparison with the CPA, see former § 26— 18 — 7(a)( 1) and (b)(1) — (4), which are nearly identical to § 12 — 15— 319(a)(1), (9), (10), (11), and (12).