PITTMAN, Judge.
S.G. (“the mother”), the mother of J.G. (“the child”), appeals from a judgment of the Barbour Juvenile Court (“the juvenile court”) terminating her parental rights with respect to the child. We affirm.

Undisputed Facts

The mother is in her early 30’s and gave birth to the child in February 2012. The *442 child has four older siblings. The two oldest of those siblings, who both have the initials M.F., are in the custody of their father. The other two siblings, K.G. and E.G., do not have any contact with the mother because her parental rights with respect to them were terminated in 2010.[1] The Barbour County Department of Human Resources (“DHR”) determined that D.N.S. was the biological father of the child; however, he informed DHR that he was financially unable to care for the child.
Between 2005 and the date of the trial in November 2012, the mother had been involuntarily committed to Searcy Hospital[2] (“Searcy”) on 10 separate occasions and had been diagnosed as suffering from schi-zoaffective disorder.[3] When she does not take her medication, she can have delusions and hear nonexistent voices. Since 2005, the longest period during which the mother has not been subject to an involuntary-commitment order is approximately two years.
On January 31, 2012, the mother was involuntarily committed to Searcy for a minimum of 150 days. During that commitment, she gave birth to the child at University of South Alabama Children’s & Women’s Hospital (“USA”) in February 2012. When she was discharged from USA after the child’s birth, the mother returned to Searcy and remained an inpatient there until she was discharged in July 2012. In September 2012, the mother was involuntarily committed to a mental-health hospital in Dothan. She remained at that mental-health hospital for three weeks and then was transferred to another mental-health hospital where she remained for approximately one and one-half weeks. She was then transferred to a group home where she remained until approximately one month before trial and was then transferred to another group home where she was living when the action was tried. She was subject to a court order requiring her to stay at that group home until February 2013.

Procedural History

DHR was notified of the child’s birth before the mother and the child were discharged from USA. DHR attempted to locate a relative who could care for the child temporarily but could not find one who was both willing and able to do so. Consequently, DHR petitioned the juvenile court for a determination that the child was dependent and the issuance of a pickup order. The juvenile court appointed a guardian ad litem for the child and issued the pick-up order. DHR picked up the child when he was discharged from USA.
The juvenile court subsequently held a shelter-care hearing and, following that hearing, entered an order determining that the child was dependent and placing the child in the temporary custody of DHR. In May 2012, while the mother was still an inpatient at Searcy, DHR filed a motion seeking a determination that, pursuant to § 12-15-312(c), Ala.Code 1975,[4] it was not *443 required to make reasonable efforts to reunite the child with the mother because the mother’s parental rights with respect to two of the child’s siblings, i.e., K.G. and E.G., had been involuntarily terminated in 2010. The juvenile court appointed counsel to represent the mother and, later in May 2012, held a hearing regarding DHR’s motion. During that hearing, the mother asserted that, due to the fact that she suffers from a mental illness, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (“the ADA”), required DHR to make reasonable efforts to reunite the child with the mother. The juvenile court asked the mother’s counsel to submit a brief in support of that assertion, and the mother’s counsel did so. After receiving that brief, the juvenile court, in August 2012, entered an order determining that DHR was not required to make reasonable efforts to reunite the child with the mother.
Later in August 2012, DHR petitioned the juvenile court to terminate the mother’s parental rights with respect to the child. As grounds, DHR alleged that, due to her mental illness, the mother was not able to care for the child or to provide material support for the child and that there were no viable relative resources.
In November 2012, the juvenile court held a bench trial at which it received evidence ore tenus. In December 2012, the juvenile court entered a judgment terminating the mother’s parental rights with respect to the child. After a summary of the testimony of each witness, the judgment states:
“The Court notes that [the child] was placed in foster care with legal and physical custody having been granted to Barbour County DHR on February 16, 2012[,] following a Shelter Care Hearing. From a review’of the court record and the evidence presented at the hearing in this matter, this Court found that [the child] was and continues to be, a Dependent child. Additionally, on August 8, 2012, this Court issued an Order stating that the Barbour County DHR was not required to make reasonable efforts to preserve or reunify [the child] with his family.
“In considering the evidence as a whole, the Court finds that [the mother] is unable to discharge her responsibilities to and for [the child]; and further that the condition of [the mother] is such that she is rendered unable to properly care for [the child], and that her condition is unlikely to change in the foreseeable future. In making these findings, the Court has considered the evidence, which is found to be clear and convincing, that [the mother] suffers from mental illness of such duration as to render her unable to care for the needs of [the child]; that Barbour County DHR has used reasonable efforts to secure relative placement of [the child], but that such efforts have failed.
“There are no viable relative resources presented to possibly avoid a termination of her parental rights.
“Accordingly, based upon the foregoing evidence considered, and findings made by the Court, the termination of parental rights of [the mother] is determined to be in the best interest of the child ...; and it is hereby
“ORDERED, ADJUDGED and DECREED that the parental rights of [the mother] are terminated.”
The mother timely filed a motion for a new trial, which the juvenile court denied.
*444 The mother then timely filed a notice of appeal.

Standard of Review

Because the facts material to the juvenile court’s judgment are undisputed, we apply a de novo standard of review to the juvenile court’s application of the law to those undisputed facts. See J.K. v. Jefferson Cnty. Dep’t of Human Res., 114 So.3d 835, 840 (Ala.Civ.App.2012) (“[A] trial court’s application of the law to undisputed facts is not given a presumption of correctness on appeal....”). Moreover, we apply a de novo standard of review to the juvenile court’s determinations regarding questions of law. Id. (“[TJhis court applies a de novo standard of review to questions of law.”).

Analysis

The mother first argues that the juvenile court erred in terminating her parental rights to the child because, she says, the evidence before the juvenile court was not sufficient to support its judgment. “Under Alabama law,
‘“[a] juvenile court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights. Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990).’
“B.M. v. State, 895 So.2d 319, 331 (Ala.Civ.App.2004). Concerning the first prong of the test, the petitioner must prove by clear and convincing evidence that grounds for termination exist. See § 12-15-319, Ala.Code 1975; and Bowman v. State Dep’t of Human Res., 534 So.2d 304, 305 (Ala.Civ.App.1988). Section 12-15-319 reads, in part:
‘“(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
[[Image here]]
“ ‘(2) ... [M]ental illness ... of the parent ... of a duration or nature as to render the parent unable to care for needs of the child.
[[Image here]]
“ ‘(8) That parental rights to a sibling of the child have been involuntarily terminated.
[[Image here]]
“ ‘Clear and convincing evidence’ is ‘ “[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.” ’ L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting § 6-ll-20(b)(4), Ala.Code 1975).
[[Image here]]
“... In R.L.M.S. v. Etowah County Dep’t of Human Resources, 37 So.3d 805 (Ala.Civ.App.2009), this court held that, “ ‘[b]efore terminating parental rights, a juvenile court must determine that *445 there are no viable alternatives. Ex parte Beasley, 564 So.2d 950, 952 (Ala. 1990). One viable alternative is placement of the child at issue with a suitable relative qualified to receive and care for the child while the parent completes the rehabilitative process, when such placement serves the best interests of the child. See Ex parte J.R., 896 So.2d 416 (Ala.2004). A relative is suitable and qualified to receive and care for a child when the relative “can safely and properly discharge the parental responsibilities of meeting the child’s needs during the child’s minority.” J.B. v. Cleburne County Dep’t of Human Res., 991 So.2d 273, 288 (Ala.Civ.App.2008). Whether a relative is suitable to assume custody of a child and whether such placement serves the best interests of the child are both questions of fact to be determined by the juvenile court. See T.B. v. Cullman County Dep’t of Human Res., 6 So.3d 1195, 1204-05 (Ala.Civ.App.2008).’
“37 So.3d at 812.”
J.S. v. Etowah Cnty. Dep’t of Human Res., 72 So.3d 1212, 1219-23 (Ala.Civ.App.2011).
With respect to the ground for termination specified in § 12-15-319(a)(2), i.e., “mental illness ... of the parent ... of a duration or nature as to render the parent unable to care for needs of the child,” the mother herself testified that she had been involuntarily committed to Sear-cy on 10 separate occasions between 2005 and November 2012, that she had been diagnosed as suffering from schizoaffective disorder, that she had been subject to a court order involuntarily committing her to Searcy when the child was born in February 2012, that she had remained subject to that involuntary-commitment order and had remained an inpatient at Searcy from February 2012 until she was discharged from Searcy in July 2012, that she had been involuntarily committed to another mental-health hospital in September 2012, that she had been continuously subject to court orders committing her to either a mental-health hospital or a group home from September 2012 through the date of the trial in November 2012, and that she would remain subject to a court order committing her to a group home until at least February 2013. We conclude that the mother’s own testimony constituted clear and convincing evidence establishing that the mother suffered from a mental illness “of a duration or nature as to render [her] unable to care for needs of the child” and that the mother’s inability to care for the child was unlikely to change in the foreseeable future.
Moreover, the undisputed evidence established that the mother’s parental rights with respect to two of the child’s siblings had been terminated in 2010. Thus, we conclude that the juvenile court also had before it clear and convincing evidence establishing the ground for termination of parental rights specified in § 12-15-319(a)(8), i.e., “[t]hat parental rights to a sibling of the child have been involuntarily terminated.”
In addition, the juvenile court had before it uncontradicted evidence indicating that DHR had diligently investigated whether there was a relative who could care for the child and that DHR had not been able to locate one. Moreover, before trial, the only relative the mother requested that DHR evaluate as a possible custodian for the child was M.C., a sister of the mother’s maternal grandmother. DHR performed a home evaluation regarding M.C. and determined that she would not be an appropriate custodian for the child because she was in poor health, her income was insufficient, and her house had defects that would pose a safety hazard to a young *446 child. At trial, the mother testified that her sister had told her earlier that day that the sister would be willing to accept custody of the child. However, the mother admitted that her sister had declined to accept custody of the child when DHR had asked her if She would do so and that the sister had financial problems. Accordingly, we conclude that the evidence before the juvenile court was sufficient to establish that there were no viable alternatives to terminating the mother’s parental rights with respect to the child. Thus, we further conclude that the evidence before the juvenile court was sufficient to support its judgment terminating the mother’s parental rights with respect to the child.
The mother also argues that the juvenile court erred in terminating her parental rights with respect to the child because, the mother says, the juvenile court erroneously determined that the ADA did not obligate DHR to make reasonable efforts to reunite the child with the mother. The parties have not cited any Alabama or federal law squarely on point regarding this argument.
In K.J. v. Tuscaloosa County Department of Human Resources, 13 So.3d 971 (Ala.Civ.App.2008), a parent asserted that the predecessor to § 12-15-319(a) violated the ADA insofar as it allowed the termination of her parental rights based on her “mental deficiency” and on her parental rights with respect to another child having been terminated in a previous proceeding. In K.J., we did not reach the merits of that argument because we concluded that, even if the ADA applied to a termination-of-parental-rights proceeding, its requirements had been satisfied in that case because the Tuscaloosa Department of Human Resources had made reasonable efforts to reunite the family that were tailored to the parent’s cognitive limitations.
However, in discussing that argument, this court stated:
“The ADA, specifically 42 U.S.C. § 12132, provides:
“‘Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.’
“The [parent] contends that DHR is a public entity that discriminated against her by terminating her parental rights on the basis of her mental deficiency. Pursuant to the ADA, a ‘mental impairment that substantially limits one or more of the major life activities of [an] individual’ is a disability. 42 U.S.C. § 12102(2). The ADA requires a public entity to make ‘reasonable accommodation’ to allow the disabled person to receive the services or to participate in the programs provided by the public entity. 28 C.F.R. § 35.130(b)(7)(1994).
“Most of the ADA challenges to parental-rights-termination proceedings have been based on the premises either (1) that the ADA preempts a state’s termination-of-parental-rights statutes by virtue of the Supremacy Clause of Art. VI. of the United States Constitution and, accordingly, that the party seeking termination must show that the requirements of the ADA have been met or (2) that the ADA constitutes a defense to a parental-rights-termination proceeding. Both types of challenges have been rejected by the vast majority of the courts that have considered them. See generally Sherry S. Zimmerman, Annot., Parents’ Mental Illness or Mental Deficiency as Ground for Termination of Parental Rights — Applicability of Americans with Disabilities Act, *447 119 A.L.R.5th 351 (2004). The Hawaii Supreme Court presented an accurate summary of the law with respect to this issue in In re Doe, 100 Haw. 335, 60 P.3d 285 (2002):
“ ‘Many of the cases examining the issue of parental rights and the ADA hold that a termination proceeding is not a “service, program, or activity” within the definition of the ADA and, consequently, the ADA does not apply to such proceedings. See In re Anthony P., 84 Cal.App.4th 1112, 101 Cal.Rptr.2d 423, 425 (2000) (“a proceeding to terminate parental rights is not a governmental service, program, or activity”); In re Antony B., 54 ConnApp. 463, 735 A.2d 893, 899 (1999) (the ADA “neither provides a defense to nor creates special obligations in a parental rights termination proceeding”); M.C. v. Dept. of Children and Families, 750 So.2d 705, 706 (Fla.Dist.Ct.App.2000) (“[Dependency proceedings are held for the benefit of the child, not the parent.”); In re Terry, 240 MichApp. 14, 610 N.W.2d 563, 569 (2000) (“Termination of parental rights proceedings are not ‘services, programs or activities’ ... [and] therefore a parent may not raise violations of the ADA as a defense to termination of parental rights proceedings.”); In re Adoption of Gregory, 434 Mass. 117, 747 N.E.2d 120,125 (2001) (“Proceedings to terminate parental rights are not ‘services, programs, or activities,’ under provision of [the ADA] ... and therefore, the ADA is not a defense to such proceedings.”).
“ ‘There is a smaller number of courts that avoid the ADA question by “finding on the facts presented that the State agency, through the provision of services designed to meet the parent’s special needs, had met any obligations that might be imposed by the ADA.” Gregory, 747 N.E.2d at 125 (citing In re Angel B., 659 A.2d 277 (Me.1995) and In re C.M., 526 N.W.2d 562 (Iowa Ct.App.1994)); see also In re A.J.R., 78 Wash.App. 222, 896 P.2d 1298,1302 (1995).
“ ‘A few courts hold that the ADA may be a defense to parental rights termination cases. See In re C.M., 996 S.W.2d 269, 270 (Tex.Ct.App.1999) (suggesting that the ADA may be defense to a termination proceeding, but rejecting the defense on procedural grounds); Stone v. Daviess County Div. of Children & Family Servs., 656 N.E.2d 824, 830 (Ind.Ct.App.1995) (if there were a statutory requirement to exert reasonable efforts to reunite parent and child, then that statute would be preempted by the ADA, but because there was none, the ADA did not apply).’
“100 Haw. at 340-41, 60 P.3d at 290-91.”
13 So.3d at 975-76.
Consistent with the majority of courts that have considered ADA challenges to termination-of-parental-rights proceedings, we hold that a termination-of-parental-rights proceeding is not a service, program, or activity within the meaning of the ADA and that, therefore, the ADA does not apply to such a proceeding. Accordingly, we affirm the judgment of the juvenile court.
AFFIRMED.
THOMPSON, P.J., and THOMAS and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, with writing.

.Although the Barbour County Department of Human Resources first became involved with K.G. and E.G. in 2005 and petitioned the juvenile court to terminate the mother's parental rights with respect to K.G. and E.G. in 2006, the juvenile court did not enter the judgments terminating the mother’s parental rights with respect to K.G. and E.G. until December 2010.

. Before the state closed it in the fall of 2012, Searcy Hospital was a state-operated mental-health hospital.

. A person suffering from schizoaffective disorder suffers from both schizophrenia and an affective (mood) disorder, which can be either major depression or bipolar disorder.

. In pertinent part, § 12-15-312(c) provides that "[rjeasonable efforts [to reunify a family] shall not be required to be made with respect *443 to a parent of the child if the juvenile court parent to a sibling of the child have been has determined that the parental rights of the involuntarily terminated.... ”