Filed 6/10/16  In re E.N. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re E.N., a Minor. | |
| Patricia C. et al., | D069514 |
| Petitioners and Respondents, | |
| v. | (Super. Ct. No. A60648) |
| Bryan N., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David B. Oberholtzer, Judge.  Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thompson & Belnap and Gregory J. Belnap for Petitioners and Respondents.

Bryan N. appeals an order terminating his parental rights to his son, E.N., on the basis of abandonment under Family Code section 7822.[1]  Bryan contends he did not "leave" E.N. in the care and custody of E.N.'s mother, Patricia C., with the intent to abandon him, and Bryan's inability to financially provide for or communicate with E.N. did not support a finding of abandonment.  Bryan also contends he was denied due process because the trial court observed he fell asleep during proceedings, which could have been related to his physical disability, but did not inquire as to whether he needed an accommodation.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

E.N. was born to Bryan and Patricia in December 2009.  Shortly thereafter, Bryan was arrested for threatening a neighbor with a gun, and Patricia ended her relationship with him.  Around the same time, Patricia started dating Charles C.  Patricia and Charles married two months later.  That same day, Bryan was released from custody and placed on home arrest.

Patricia, Charles, and E.N. moved from Santa Rosa to San Diego.  In January 2011, the court granted Patricia and Bryan joint legal custody of E.N. and awarded Patricia physical custody.  The court provided Bryan two visits per month with E.N., one at Bryan's home in Santa Rosa and the other in San Diego.  Bryan visited E.N. in San Diego that month.  For the next eight months, Patricia took E.N. to Sonoma County to

_____

[1]     Statutory references are to the Family Code.

2

visit Bryan once per month. Bryan's last contact with E.N. was in September 2011 when E.N. was less than two years old.

In October 2011, Patricia was pregnant and her doctor advised her not to travel long distances. Thus, Patricia wrote Bryan a letter requesting he travel to San Diego for visits with E.N. during her pregnancy. Bryan did not respond to the letter.

In May 2012, E.N.'s paternal grandmother called Patricia and scheduled a visit with E.N. at the end of that month. Patricia canceled the visit because she had been in a car accident.

In June 2012, Bryan sent Patricia a text message stating that he missed E.N. and inquiring as to when Patricia planned to go to Santa Rosa. Bryan and Patricia communicated again in December 2012, and Patricia suggested that he come to San Diego. Bryan could not afford to travel to San Diego because he was on a limited social security income and informed Patricia that he could not leave Sonoma County.

Bryan did not have any contact with Patricia or E.N. in 2013. In April 2014, Bryan and Patricia tried to arrange a visit with E.N., but could not agree on the arrangements. Bryan would only agree to a visit if Patricia brought E.N. to Sonoma County.

In November 2014, Bryan sent a text message to Patricia, stating "tell [E.N.] I love him." The next month, Bryan called Charles and they discussed arranging a visit with E.N. However, Charles ended the call when Bryan threatened him.

3

In May 2015, Bryan called Patricia to inquire about E.N. Bryan and Patricia discussed meeting halfway between San Diego and Santa Rosa for a lunch visit. Bryan stated he would contact Patricia soon, but she did not hear from him.

In August 2015, Patricia and Charles petitioned the court to terminate Bryan's parental rights under section 7822. After a contested hearing, the court found Bryan had made only token efforts to maintain a relationship with E.N. and had not made any efforts to support him financially. The court found, by clear and convincing evidence, that Bryan intended to abandon E.N. Ultimately, the court granted Patricia and Charles's petition to declare E.N. free from Bryan's parental custody and control.

DISCUSSION

I

*General Legal Principles*

A proceeding to have a child declared free from the custody and control of a parent may be brought under section 7822 where "[t]he child has been left by . . . [¶] [o]ne parent . . . in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a).) A parent's "failure to provide support, or failure to communicate" with the child for a period of one year or more "is presumptive evidence of the intent to abandon. If the parent . . . [has] made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent . . . ." (§ 7822, subd. (b).) Abandonment is a

factual question we review for substantial evidence. (*In re B.J.B*. (1986) 185 Cal.App.3d 1201, 1211; *In re Amy A*. (2005) 132 Cal.App.4th 63, 69.)

II

*Abandonment*

Bryan contends the evidence is insufficient to support the court's finding he abandoned E.N. within the meaning of section 7822. Bryan asserts: (1) he did not "leave" E.N. with Patricia; rather, the court placed E.N. with Patricia after custody proceedings; (2) Patricia and Charles refused to accept any support, there was no judicial order for support, and E.N.'s paternal grandmother attempted to offer support; and (3) Patricia and Charles prevented his communication with E.N.

A. *Custody Order*

"The fact that a parent has not communicated with a child . . . or that the parent intended to abandon the child does not become material . . . unless the parent has 'left' the child" within the meaning of section 7822. (*In re Jacklyn F*. (2003) 114 Cal.App.4th 747, 754.) A parent "leaves" a child by voluntarily surrendering the child to another person's care and custody. (*In re Amy A*., *supra*, 132 Cal.App.4th at p. 70 [existence of a judicial order placing custody of child with one parent does not preclude a finding the other parent "left" the child within the meaning of § 7822]; *In re George G*. (1977) 68 Cal.App.3d 146, 160.) Conversely, "abandonment does not occur when the child is taken from parental custody against the parent's wishes." (*Ibid*.)

Here, the evidence showed Bryan's disengagement from E.N.'s life was not caused by judicial action.  Although a custody order gave Patricia physical custody of E.N., it also provided Bryan visitation rights.  Bryan did not exercise those rights.  After the court granted Bryan two weekend visits per month with E.N., Bryan made only one trip to Southern California.  On that occasion, Bryan picked E.N. up and took him to a relative's home in Los Angeles.  Bryan did not make further efforts to visit E.N. in San Diego and instead relied on Patricia transporting E.N. to Sonoma County.  However, the visits were not only Patricia's responsibility because the custody order provided that Patricia would transport E.N. to Sonoma County one weekend per month and Bryan would have another weekend per month visit in San Diego.  Although Patricia did not follow the custody order after September 2011, Bryan also did not comply with the order or engage in efforts to maintain contact with E.N.

At the time the petition in this case was filed, Bryan had not seen E.N. in nearly four years.  He also had not sent letters, spoken with E.N. on the telephone, or tried to communicate with him in any other manner.  Bryan's inaction was substantial evidence that he "left" E.N. with Patricia within the meaning of section 7822.  (*In re Amy A.*, *supra*, 132 Cal.App.4th at p. 70.)

B.  *Support and Communication*

Generally, nonsupport by a parent who does not have the ability to pay cannot, standing alone, prove intent to abandon or trigger the presumption of intent to abandon.  (See *Adoption of Allison C*. (2008) 164 Cal.App.4th 1004, 1013 (*Allison C.*); *In re Baby*

6

*Boy M.* (1990) 221 Cal.App.3d 475, 482.) " ' "Although a parent's failure to contribute to his child's support absent demand does not necessarily show abandonment, such failure coupled with failure to communicate, may do so." ' " (*Allison C.*, at p. 1013.)

Here, the court acknowledged that Bryan was on social security income, but found that he had not made even token efforts to support E.N., and the paternal grandmother's purchase of gifts for E.N. could not be imputed to Bryan. The court also found that Bryan had made only "token attempts to maintain any relationship, whatsoever, with [E.N.]." Bryan challenges the court's findings because although he did not have the ability to financially support E.N., he and his family tried to provide support items by holding a baby shower and buying E.N. gifts, but Patricia did not accept those items. Bryan also contends Patricia thwarted his efforts to communicate with E.N.

According to Patricia, Bryan did not send E.N. any letters or gifts and she was not aware of gifts Bryan's family purchased for E.N. Patricia also testified that there had never been any communication between Bryan and E.N. on the telephone. Patricia offered to have Bryan communicate with E.N. through Skype, but Bryan refused because he was paranoid and believed it was not an acceptable communication method. The court was entitled to discount Bryan's and his family members' testimony and favor Patricia's testimony. (*Allison C.*, *supra*, 164 Cal.App.4th at p. 1013.)

Although we agree with Bryan that his inability to support E.N. financially was not on its own sufficient to establish abandonment, we do not consider that factor in isolation. The evidence supports the court's finding that Bryan had made only token

7

attempts to maintain a relationship with E.N.  Bryan never spoke to E.N. on the telephone, did not send him letters or gifts, and did not visit him in San Diego.  Based on the record, substantial evidence supports the court's finding of abandonment under section 7822.

III

<em>Disability Accommodation</em>

A.  *Additional Background*

In their petition to terminate Bryan's parental rights, Patricia and Charles made an allegation under section 7826 that Bryan was declared to be developmentally disabled or mentally ill by a court of competent jurisdiction.  After Patricia and Bryan presented their evidence, the court inquired about their section 7826 allegation.  Patricia and Charles dismissed the allegation.  As part of his evidence, Bryan testified he has bipolar disorder and Chiari, which he described as a disorder in which his skull did not form properly around his brain and resulted in pain, headaches, and other symptoms.

B.  *Analysis*

Bryan contends he was denied due process because the trial court recognized he fell asleep during proceedings, which could have been related his physical disability, but did not inquire as to whether he needed an accommodation.  Bryan further contends the court had a duty to inquire about his disability because Patricia and Charles raised a section 7826 allegation.

8

"[S]ections 7826 and 7827 provide that where a parent has been declared to be developmentally disabled, mentally ill, or mentally disabled, and 'will not be capable of supporting or controlling the child in a proper manner,' a proceeding may be brought under . . . section 7802 'for the purpose of having a minor child declared free from the custody and control of either or both parents.' " (*In re Anthony P*. (2000) 84 Cal.App.4th 1112, 1115.)

Here, Bryan does not provide any authority to support his argument the court had a sua sponte duty to inquire about his disability regardless of whether Patricia and Charles dismissed their section 7826 allegation. "We need not consider an argument for which no authority is furnished." (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384.) Further, although "[s]ections 7826 and 7827 contain specific directions as to the nature and quantum of evidence required to justify" a proceeding to terminate parental rights based on disability (*In re Anthony P*., *supra*, 84 Cal.App.4th at p. 1115), those sections do not require the court to conduct an inquiry regarding disability when petitioners dismiss their section 7826 allegation.

Bryan suggests the principle that *criminal* defendants cannot be tried unless they are mentally competent applies to proceedings to terminate parental rights. Again, Bryan does not offer authority for this proposition. Proceedings to terminate parental rights are not criminal proceedings. Rather, they fall within the Family Code and serve to protect the interest and welfare of the child. (*Allison C., supra,* 164 Cal.App.4th at pp. 1009-1010.) " '[T]he rights and protections afforded parents in a dependency proceeding are

9

not the same as those afforded to the accused in a criminal proceeding.' " (*In re V.V.* (2010) 188 Cal.App.4th 392, 399.)

Notably, Bryan never requested or alerted the court to his need for an accommodation. He described his symptoms, but did not include falling asleep within them. Thus, the court was not on notice that Bryan may have fallen asleep during proceedings as a result of his disability. If Bryan needed an accommodation, it was incumbent on him to request one.

In any event, the court's conclusion that Bryan abandoned E.N. was not based on Bryan falling asleep during the hearing. Rather, the court only mentioned Bryan's behavior as a "footnote" after finding abandonment by clear and convincing evidence. Based on the record before us, we conclude the court did not deny Bryan due process by not inquiring as to whether he needed an accommodation.

## DISPOSITION

The order is affirmed.


McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.

10