L. CHARLES WRIGHT, Retired Appellate Judge.
In June 1987 the Department of Human Resources (DHR) filed a petition, requesting that the parental rights of Linda Holloway Baker (mother) and Jimmy Holloway (father) in their children, Jonathan, Scott, Kristal, and April Holloway, be terminated. After several days of hearing, the trial court issued an order which terminated the parental rights of both the mother and father in their children. The court’s order vested permanent legal custody of the children in DHR.
The mother and father appeal separately.
On appeal both the mother and father contend that the certification of the trial transcript as adequate for appeal by the juvenile court was inappropriate.
During the hearing on the petition the testimony was recorded electronically on electronic equipment operated by the court. The mother filed a motion for adequate record on the same date that she filed her notice of appeal. Thereafter, the trial court issued orders appointing attorneys to represent both the mother and the father. These orders designated a court reporter to transcribe the tapes, authorized the attorneys representing the mother and the father to listen to these tapes, and provided that the court would make a determination after the tapes had been transcribed as to the adequacy of the record for appeal. In March 1988 the judge who heard the case certified the transcript as adequate for appeal.
Rule 20(B) of the Alabama Rules of Juvenile Procedure (A.R.J.P.) provides:
“Testimony shall be transcribed by the designee of the juvenile court judge only upon order of the court or upon the request of any party at his own expense. The transcript shall be certified as directed by the court or as required by the Alabama Rules of Appellate Procedure.”
The juvenile court judge is empowered to certify the record as adequate by Rule 28, A.R.J.P.
It is argued that the transcript submitted by the court reporter is inadequate because there were several occasions where the court reporter made an entry of “inaudible” when she was unable to determine what had been said. However, neither the mother nor the father contended that inclusion of any of the omitted testimony would have benefited them upon review by this court. Therefore, we find that the argument is not a grounds for reversal. Dobbs v. State Department of Pensions & Security, 484 So.2d 1052 (Ala.1984).
It is further argued that the transcript was volumed improperly and that this renders the record inadequate for appeal purposes. We find this technicality does not make the record inadequate for appellate review.
In a second issue both the mother and the father contend that there was an absence of clear and convincing evidence to support the termination of parental rights in this case.
Our review of the record reveals that the initial contact with the Holloway family was in 1982 when the father was jailed for physically abusing Scott. Homemaker services were initiated for the Holloway family at that time. In February 1984 the mother and father were having marital problems and placed Kristal and April with a Mr. and Mrs. Satterwhite, who were relatives of the father. Jonathan and Scott *635 were placed with the Ford family, who were neighbors of the Satterwhite family. In early March 1984 an agreement was reached, whereby these families were given power of attorney over the children, whatever that meant.
Scott was removed from the Ford family at their request due to his behavior problems. Temporary custody of Scott was granted to DHR in April 1984, and he was placed at the Alabama Sheriffs’ Boys Ranch while the Ford family retained custody of Jonathan until he was returned to the physical custody of his parents in December 1984. Temporary legal custody of Jonathan was returned to his parents in March 1985. In May 1985 the father alleged that the mother was neglecting Jonathan. After a hearing Jonathan was removed from the mother’s custody in June 1985 and placed in the foster home with Kristal and April.
In 1984 Linda Satterwhite contacted DHR with allegations that Kristal had been sexually abused by her mother. It was never determined whether the allegations of sexual abuse were well founded. However, there was testimony of inappropriate sexual behavior by Kristal from Mrs. Sat-terwhite and the foster mother. A DHR social worker testified that, because the child was already out of that environment at the time the allegations were made, they concentrated on counseling for the child and required that visits with her mother be supervised.
In December 1984 or January 1985, the Satterwhites notified DHR that they no longer wished to care for Kristal and April. Temporary legal custody was granted to DHR, and the girls were placed in a foster home.
Jonathan, Kristal, and April were returned to the mother’s physical custody in late 1985 or early 1986 with continued protective services by DHR. She and the father were divorced. The mother was living in public housing, was completing a job training program, and appeared to be sta-blizing. Scott was returned to the mother’s custody in April 1986. Family counseling sessions were arranged for the mother and children.
Efforts to reunite and rehabilitate the family failed, and the children were removed from the mother’s custody in July 1986 after she attempted suicide. The mother’s suicide attempt occurred after the father reappeared on the scene and began visiting the children in violation of a court order. The mother failed to follow through with mental health counseling after her suicide attempt. In August 1986 the mother married Donnie Baker.
Fran Cronenburg, a family therapist, testified at the hearing. She administered tests to the mother and children in 1985, provided family counseling for the mother and children in 1986, and tested and assessed the mother in June 1987. She testified that in 1985 she recommended that the children be placed with the mother because she appeared to be stabilizing. However, when she assessed the mother in June 1987, nothing had changed over the years. Ms. Cronenburg’s assessment of the mother is that she has a history of acting impulsively and that her lack of planning causes problems. The mother seems to have very little control over her life and lives from crisis to crisis. Ms. Cronenburg testified that the children need a permanent placement in a stable environment as soon as possible.
The mother has been repeatedly told that she needed to stabilize her lifestyle or that it would be necessary to pursue permanent placement plans for the children. In fact, a DHR social worker met with the mother in April 1987 to outline what she needed to accomplish by June 1987 so that DHR would not file for termination of parental rights. The mother failed to accomplish these objectives, and the petition for termination of parental rights was filed.
The mother and father have a very stormy relationship. The mother has repeatedly told various DHR workers that she fears that the father will physically harm her or the children. The father has a violent temper, but he is receiving counseling. However, the father’s therapist testified that the father has negative feelings toward the mother as a mother. He has *636 stated on previous occasions that he did not want the children returned to the mother’s custody and that he would kill the children before he would allow the mother to marry someone else and raise his children.
In March 1987 a DHR caseworker met with the father. He indicated that he was receiving counseling, but he refused to sign a release of information form so DHR could determine his suitability as a parent. During this time the father and Donnie Baker had an altercation with a baseball bat.
In May 1987 the father notified DHR that he wished to be considered as a resource for the children, but he did not provide DHR with an address so that a home evaluation could be arranged. Through the years the father has not maintained contact with DHR on a regular basis, and he has not always provided them with an address or telephone number so that they could maintain contact with him.
At the hearing the father testified that he did not know his address because he had only lived there for a little over a month and he does not try to keep up with his address. The father admitted that he was not currently in a position to take the children and that he has never had a stable environment so that he could be considered as a resource for the children. (At the time of the hearing the father was living in a two-bedroom house with Brenda Stone and her five children. The father and Mrs. Stone had no plans to marry as Mrs. Stone is already married. There was approximately a nine-day period between the time the father testified in September 1987 and the final day of the hearing on the petition to terminate parental rights. The father testified that he was trying to find a better house and a better job. When questioned by the court as to what he had been able to accomplish, he stated that he had found a job paying $5.50 an hour, but had been unable to locate a suitable place to live.)
Based upon the fact that the parents have been unable to stabilize their lifestyles since 1984 and the fact that there was ample testimony that it would be in the best interests of the children to terminate parental rights and locate permanent placement for them, we find that there was clear and convincing evidence to support the trial court’s decision. Brown v. Alabama Department of Pensions & Security, 473 So.2d 533 (Ala.Civ.App.1985). Additionally, the court may consider the environment into which the children would be placed. Brown, 473 So.2d 533.
The father also contends that termination of his parental rights was inappropriate because DHR failed to give any evidence as to the existing conditions of his present home and lifestyle and because placement of the children with him with continued monitoring by DHR would be a less drastic measure. However, the father had failed to provide DHR with an address so that a home evaluation could be arranged, and he admitted that he was currently not in a position to take the children at the time of the hearing.
The mother contends that the admittance of the tape made by Kristal Holloway and Linda Satterwhite in 1984 regarding the allegations of sexual abuse by the mother was reversible error. Assuming that this tape was inadmissible, we find that the contents were merely cumulative as the father, Linda Satterwhite, and various DHR caseworkers testified regarding such allegations. We further find the admission of this tape to be harmless error, and there was ample evidence other than the tape to uphold the trial court’s decision to terminate parental rights. Sanders v. Guthrie, 437 So.2d 1313 (Ala.Civ.App. 1983).
This case is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama of 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.