DONALDSON, Judge.
These are appeals of judgments of the Autauga Juvenile Court ("the juvenile court") terminating the parental rights of J.D. ("the father") to S.D. and D.D. ("the children"). We affirm the judgments.
Facts and Procedural History
On March 15, 2017, E.R. ("the mother") filed petitions to terminate the parental rights of the father to the children. In her petitions, the mother alleged that the father had physically abused S.D., had refused to provide any substantial support to the children, had not had any recent physical contact with the children, that the children feared the father, and that terminating the father's parental rights would be in the best interest of each child. On March 31, 2017, the juvenile court appointed a guardian ad litem to represent the children. The father filed answers to the petitions denying each allegation. The father also filed a counterclaim in each case seeking an award of attorney's fees. The mother answered the father's counterclaims asserting several affirmative defenses.
On July 10, 2017, after a trial, the juvenile court entered a judgment in each case terminating the father's parental rights to each child and making certain findings of fact. The juvenile court's judgments state:
"1. ... Uncontroverted evidence was presented to the [juvenile court] that the [father] committed physical abuse against the minor child, S.D., when she was 6 years old. [The father] voluntarily entered a plea of guilty to battery of a child, a misdemeanor under Indiana law, to the physical abuse of said child during the Divorce proceedings. The [mother] testified that the facts surrounding the battery charge involved an incident wherein the [father] became extremely angry with the child to the point that he 'lost control' after the child asked him if he wanted her to help cook a meal. [The mother] testified that the [father] physically attacked the minor child to include grabbing her and slamming her head on the floor in the home to the point that the child was hospitalized with a concussion, contusions, and lacerations. The [mother] and the minor child testified to the extent of her injuries both physically and emotionally. Evidence was presented to the [juvenile court] that the minor child continues to suffer emotionally to the extent that she does not wish to see her father again or have any contact *1092 with him for the rest of her life. Pursuant to the Indiana Court Orders, Judge David C. Bonfiglio ordered that the [father]'s visitation would be limited to Skype or electronic communication subject to the [father]'s completing substantial psychiatric counseling to the extent that it satisfied the [mother] to expand his visitation. The [mother] presented credible testimony to the [juvenile court] that the [father] has failed to complete said counseling accompanied by evidence that the Guardian Ad Litem in the Indiana Case, MARY RAATZ reviewed the [father]'s counseling history over the next few years and determined that he had failed to comply with the [c]ourt's Order to the extent that he should not be allowed any physical visitation with the child.
"2. Through testimony, the [mother] averred that the [father] was currently in arrearage with his Child Support obligation as Ordered in the Divorce Decree in excess of $30,000.00 exclusive of any applicable interest. The [mother] further testified that the [father] had failed to have any physical contact with the child since 2013 and that there were a number of times when he would go for more than four (4) to six (6) months without communicating with the child via electronic means or by telephone. The [mother] further testified that the [father] was in Contempt of the Indiana Order in that he has failed and/or refused to pay Court Ordered Attorney fees in excess of $3,900.00 to her Indiana Attorney. A bill from said Attorney was introduced into evidence in this case. The [mother] requested this [juvenile court] to Terminate the Parental Rights of the [father], alleging that the [father] is unfit as a parent to the minor children for a number of reasons, primarily for his failure to substantially contribute financially to the minor children's welfare, the physical abuse admitted by the [father] against the minor child, S.D., and the extensive period of time that the [father] has basically been out of both of the children's lives to include the aforementioned instances where the [father] did not communicate in any manner for a period of over four (4) months at a time.
"3. The [father] testified to the [juvenile court] that he had attempted counseling with a number of different Counselors through his association with the United States Marine Corp. The [father] testified and evidence was admitted where he received counseling from a licensed Counselor in Florida, Mrs. Farnsworth; however, documentation was presented to the [juvenile court] via the Guardian Ad Litem (Raatz's) report that the [father]'s counseling through Mrs. Farnsworth, that he had failed and/or refused to comply with her recommendation that he receive individual psychotherapy as well as group support counseling before any physical visitation with the minor children would occur. The [father] alleged that the [mother] has kept him away from the minor children and evidence of alleged attempted communications by the [father] to the minor children was admitted and has been considered by this [juvenile court]. The [father] admitted that he has accumulated a substantial arrearage in Child Support obligations of several thousand dollars but he is not sure exactly how far behind he is. The [father] admitted to physically abusing S.D. when she was six (6) years old and acknowledged his Plea of Guilty to the charge of Battery of a Minor. The [father] spent approximately eight (8) months in jail as a result of the incident. Evidence [was] presented to the [juvenile court] that the [father] has been diagnosed with Bipolar *1093 Disorder, psychosis and a Panic Disorder. Further evidence was presented to the [juvenile court] that the [father] has continued to deal with his condition of significant mental health issues since the date the parties were divorced. The [father] testified that he is currently not on any medications; however, the private Counselor, Mrs. Farnsworth previously reported to the Guardian Ad Litem, (Mary Raatz), that the [father] had been abusing Klonopin and that she had a fear that he would continue to do so without intervention. Throughout the proceeding, the [father] displayed signs of struggling with significant emotional issues beyond what the [juvenile court] routinely sees in these type cases even given the consideration that this [is] an action requesting the termination of parental rights. [The father] asked to stop the proceeding and the [juvenile court] became concerned to the extent that the [juvenile court] summoned assistance from the Autauga County Sheriff's Office to have the presence of a Deputy in the [c]ourt room in the event the [father] 'lost control' in the manner he had described during the occurrence of the 'incident' with his minor daughter when he physically attacked her. [The father] testified that during said incident that he had 'lost time' and could not remember exactly what happened or why it happened. ... [The father] acknowledged that he had been discharged from the United States Marine Corp by Discharge order associated with the incident which occurred between him and his minor daughter. Although having become visibly shaken during his testimony, both the [father] and the [mother] appeared to be lucid, coherent and cooperative in providing their testimony to the [juvenile court] throughout the entire proceedings. [The father] was able to conclude his testimony after a recess.
"4. The [juvenile court] took testimony from both of the parties' minor children in camera, by agreement of both parties, their respective counsel and the Guardian Ad Litem, [Steve Langham]. The testimony taken from the children took place in camera in the Law Library of the Autauga County Courthouse. Said testimony was taken in order agreed upon by the parties, their respective Counsel and the Guardian Ad Litem. The [juvenile court] will not divulge all of the contents of the testimony given by the children in this Order; however, this [juvenile court] has given great weight to each child's testimony given the subject matter of said testimony and the disposition and demeanor of each child.
"5. Thea Langley testified that she had been appointed by Circuit Judge Ben Fuller in a collateral Domestic Relations case pending in Autauga County Circuit Court by Order of Judge Fuller. Mrs. Langley testified that she had met with the minor children and spoke with the [father] and [the mother] on a number of occasions in an effort to find a way to improve the relationship between the [father] and each child. Mrs. Langley admitted in her testimony that she had not been provided with any of the reports associated with the previous Indiana proceedings to include the incident/offense report associated with the battery of S.D., the medical records associated with S.D.'s injuries, the Guardian Ad Litem, Mary Raatz's report to the Indiana Court or the findings of the [father]'s previous counselor in Florida, Mrs. Farnsworth. Mrs. Langley appears to have done a thorough and competent job associated with the duties assigned to her by Judge Fuller; however, she lacks any knowledge of the history of the case which is not before the [juvenile court] in consideration of whether or not *1094 to terminate the [f]ather's rights. Mrs. Langley did not deliver an opinion to this [juvenile court] or make a recommendation as to the termination of parental rights for the foregoing reasons.
"6. Based upon all of the testimony and other evidence presented to this [juvenile court], the [juvenile court] finds that the [mother] has met the substantial burden placed upon her applying Alabama's two-pronged test and Alabama Statute [§] 26-18-7 (Code of Alabama, 1975 ). The [juvenile court] is convinced that the [father] abused the minor child, S.D., in the presence of the youngest child, D.D., to the extent that the child suffered physical injuries and emotional injuries which both children is [sic] still dealing with today and may have to do so for the rest of their lives. The [juvenile court] is further convinced that the [father] has failed to substantially provide financial support and that he is unable to produce any evidence disputing the fact that he is currently in arrears in excess of $30,000.00 exclusive of any applicable interest. The [juvenile court] is convinced that there has occurred other circumstances to include but not be limited to, the [father]'s being absent from both minor children's lives and that there were periods in excess of four (4) months on more than one occasion where the [father] had no communication with the minor children at all, electronically by Social Media or otherwise. The [juvenile court] further finds that there are no other viable alternatives which have not been considered or attempted and that the [father] has not presented any evidence to the [juvenile court] of any family members of the [father] who are available and willing to assist with any type of reunification. The report submitted by Guardian Ad Litem, [Steve Langham], and Indiana Guardian Ad Litem, Mary Raatz, coupled with the fact that the [father]'s own counselor (Mrs. Farnsworth) has indicated a lack of cooperation on the part of the [father] in that he had refused the recommended individual psychotherapy and community support involvement. The [juvenile court] is convinced that the evidence shows that the [father] has been unwilling to take the steps as prescribed by Indiana Judge Bonfiglio to try and reenter the children's lives through counseling and rehabilitation. Both children appear very happy and well cared for in the home of the [mother] and their Step-Father....
"Based upon all of the testimony and other evidence admitted and considered by the [juvenile court] it is hereby ORDERED, ADJUDGED and DECREED as follows:
"1. That the Parental Rights of the [father] as to the minor dependent child S.D. and the minor dependent child D.D. are hereby terminated.
"2. That the [juvenile court] further finds in terminating the parental rights of the [father], that substantial credible evidence has been presented to this [juvenile court] to make the determination that [the father] is unfit as a parent to the minor children and that there are no other viable alternatives to terminating his parental rights which have not been considered by the Indiana Court and this [juvenile court]. Each party shall be responsible for his or her own attorney's fee with all fees due to the Guardian Ad Litem, [Steve Langham], shall be satisfied by the State of Alabama pursuant to Juvenile Contract with Mr. Langham.
"3. All other relief requested by either party to this action is hereby denied. The cost of this action having been paid by the [mother].
*1095 "4. That this Order is hereby entered as a Final Order in these proceedings."
Neither party filed any postjudgment motions. The father timely filed his notices of appeal to this court on July 24, 2017. This court consolidated the appeals ex mero motu. This court has jurisdiction to consider the appeals pursuant to § 12-15-601, Ala. Code 1975, and Rule 28, Ala. R. Juv. P.
Standard of Review
Pursuant to § 12-15-319(a), Ala. Code 1975, a juvenile court may terminate a parent's rights to a child if it finds from clear and convincing evidence that the parent is unable or unwilling to discharge his or her responsibilities to and for the child or that the parent's conduct or condition renders that parent unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future. Section 12-15-319(a) further provides that the juvenile court shall consider, among other things:
"(2) Emotional illness, mental illness, or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of a duration or nature as to render the parent unable to care for needs of the child.
"(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by the treatment of a sibling.
"....
"(9) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of support of the child, where the parent is able to do so.
"....
"(11) Failure by the parents to maintain consistent contact or communication with the child.
"(12) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review."
In determining whether to terminate the father's rights, "[the] juvenile court [was] required to apply a two-pronged test...: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights." B.M. v. State, 895 So.2d 319, 331 (Ala. Civ. App. 2004) (citing Ex parte Beasley, 564 So.2d 950, 954 (Ala. 1990) ). We have further explained that
"appellate courts must apply a presumption of correctness in favor of the juvenile court's findings in a termination-of-parental-rights action. J.C. v. State Dep't of Human Res., 986 So.2d 1172, 1183 (Ala. Civ. App. 2007). 'Additionally, we will reverse a juvenile court's judgment terminating parental rights only if the record shows that the judgment is not supported by clear and convincing evidence.' Id. See Ex parte McInish, 47 So.3d 767, 774 (Ala. 2008) (explaining standard of review of judgment resting upon factual determinations required to be based on clear and convincing evidence)."
S.S. v. Calhoun Cty. Dep't of Human Res., 212 So.3d 940, 949 (Ala. Civ. App. 2016). See also *1096 K.S.B. v. M.C.B., 219 So.3d 650, 653 (Ala. Civ. App. 2016) ("A juvenile court's judgment terminating a parent's parental rights must be supported by clear and convincing evidence."). "This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear and convincing." Id. (citing Ex parte T.V., 971 So.2d 1, 9 (Ala. 2007) ). "When [the juvenile court's] findings rest on ore tenus evidence, this court presumes their correctness." Id.
Discussion
Although the father lists four issues in his principal brief, he essentially raises three points of alleged error. The father first contends that the record is inadequate for a direct appeal to this court and that the juvenile court's certification of the record as adequate is in error. Second, the father argues that the evidence does not support the termination of his parental rights to the children. Third, the father argues that the juvenile court erred in holding his counsel in direct contempt during the proceedings. We address the father's issues in a different order than presented in his brief.
During the trial, counsel for the father was found to be in contempt for purportedly recording the proceedings in violation of an order of the juvenile court. In his brief, the father asserts that the juvenile court's finding of contempt against his counsel is due to be reversed. The father does not claim that the finding of contempt against his counsel caused any injury to him, e.g., he does not claim that the decision to terminate his parental rights was affected by the finding or that the finding affected the presentation of evidence. The father cites no authority in support of an argument that the finding of contempt should result in a reversal of the judgment. See Aramini v. Aramini, 220 So.3d 322, 332 (Ala. Civ. App. 2016) (quoting Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala. Civ. App. 1996) ) (" 'This court will address only those issues properly presented and for which authority has been cited.' "). We also note that the present appeal involves only the father and is not an appeal by the father's counsel from the contempt finding. See Rule 70A(g), Ala. R. Civ. P. (providing for a review by appeal of contempt adjudications). The father cannot raise arguments on behalf of his counsel. "As a general rule, 'a litigant may not claim standing to assert the rights of a third party.' " Ex parte Izundu, 568 So.2d 771, 772 (Ala. 1990) (quoting Jersey Shore Med. Ctr.-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 144, 417 A.2d 1003, 1006 (1980) ). Therefore, the father has not established reversible error on this basis.
Regarding the adequacy of the record, the father correctly notes that this court may exercise jurisdiction over an appeal from a juvenile court if the record, when recorded by electronic means, is transcribed by a certified court reporter and certified as adequate for appellate review by the juvenile court. See Rule 28, Ala. R. Juv. P. The record was certified by the juvenile court as adequate for appellate review on October 23, 2017. The father argues that, within the transcript in the record on appeal, there are 99 instances in which testimony is described as inaudible and was not transcribed, and, therefore, he asserts, the juvenile court erred to reversal by certifying the record as adequate for appellate review. The father notes that a juvenile court's certification of the record as adequate for appellate review is not binding on this court. See R.G. v. C.M., 980 So.2d 417, 418 (Ala. Civ. App. 2007).
Although the father points to what he contends are irregularities or omissions in the transcription, he does not contend that *1097 any omissions or irregularities are material to a review of the proceedings or that the decision of the juvenile court was based on any omitted material. See Baker v. State Dep't of Human Res., 533 So.2d 633, 634 (Ala. Civ. App. 1988) (citing Dobbs v. State Dep't of Pensions & Sec., 484 So.2d 1052 (Ala. 1984) )(finding the record to be adequate despite indications that certain testimony was inaudible when the appellant did not contend "that inclusion of any of the omitted testimony would have benefited [him] upon review by this court"). We determine that the father has failed to establish that the juvenile court's certification of the record on appeal as adequate for appellate review was erroneous or amounts to a ground for reversal. See T.T.W. v. V.A., 868 So.2d 445 (Ala. Civ. App. 2003) (finding the record adequate for review despite testimony of 217 points in the record during which testimony was inaudible); A.V. v. Morgan Cty. Dep't of Human Res., 623 So.2d 331, 332 (Ala. Civ. App. 1993) (noting that the record contained "some inaudible discussions and conversations between the attorneys and the trial judge" but holding that "such omissions from the record do not make the record inadequate for review").
The father next contends that the juvenile court erred in terminating his parental rights because, he says, there was not clear and convincing evidence presented to support the termination. The father argues that the juvenile court's finding that he failed to substantially support the children by being $30,000 in arrears in child support is not supported by the evidence. The father asserts that the juvenile court's finding that he was unable to produce any evidence indicating that he has not amassed such an arrearage is "a clear abuse of discretion that is against the clear weight of the evidence." The father argues that the juvenile court improperly excluded evidence from the Indiana court that divorced the parties that purportedly showed that he had made child-support payments. The father does not, however, cite any rule of evidence or any caselaw to support his contention that that evidence was wrongly excluded by the juvenile court.
" Rule 28(a)(10) [, Ala. R. Civ. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived. Moore v. Prudential Residential Servs. Ltd. P'ship, 849 So.2d 914, 923 (Ala. 2002) ; Arrington v. Mathis, 929 So.2d 468, 470 n. 2 (Ala. Civ. App. 2005) ; Hamm v. State, 913 So.2d 460, 486 (Ala. Crim. App. 2002). 'This is so, because " 'it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.' " ' Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala. 2007) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala. 2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala. 1994) )."
White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008).
The father also argues that the juvenile court failed to consider his ability to pay child support. See § 12-15-319(a)(9) (failure "to provide for the material needs of the child or to pay a reasonable portion of support of the child, where the parent is able to do so," is a factor to be considered when determining whether to terminate parental rights). The father argues that the juvenile court disregarded his testimony that he was, at times, unemployed or incarcerated and unable to make child-support payments. The record on appeal shows that the father and the mother *1098 were divorced in 2013. The father was ordered to pay child support pursuant to that divorce judgment. In the time since the entry of the divorce judgment, the father was incarcerated for approximately eight months. The father testified that he was "unemployed for a quite significant amount of time." The father testified that in one year he "only made $7,400." Based on the father's own testimony, there were periods when he was employed and earning income. The juvenile court could have found that, during those periods when the father was not incarcerated or unemployed, he had the ability to make child-support payments and failed to do so. The father argues that the juvenile court did not specifically find that he was able to make child-support payments during those times and, thus, erred to reversal. "[W]hen the juvenile court has not made specific factual findings in support of its judgment, we must presume that the juvenile court made those findings necessary to support its judgment, provided that those findings are supported by the evidence." Marshall Cty. Dep't of Human Res. v. J.V., 203 So.3d 1243, 1249 (Ala. Civ. App. 2016) (citing D.M. v. Walker Cty. Dep't of Human Res., 919 So.2d 1197, 1210 (Ala. Civ. App. 2005) ). There is evidence contained in the record on appeal from which the juvenile court could have found that the father failed "to provide for the material needs of the child[ren] or to pay a reasonable portion of support of the child[ren], where the [father was] able to do so." § 12-15-319(a)(9). We, therefore, decline to reverse the juvenile court's judgments on this basis.
The father also argues that the juvenile court erred in finding that he had been absent from the children's lives for periods of four months at various times and that the juvenile court could not terminate his rights on that basis. The father equates the juvenile court's finding to a finding of abandonment. Abandonment is defined in § 12-15-301(1), Ala. Code 1975, as:
"A voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his or her presence, care, love, protection, maintenance, or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent."
The father cites § 12-15-319 and quotes the language of that statute regarding the rebuttable presumption that a parent is unable or unwilling to act as a parent in a case in which the parent has abandoned a child and that abandonment continues for a period of four months next preceding the filing of the petition seeking to terminate parental rights. See § 12-15-319(b). The father argues that the juvenile court misapplied the law as it relates to abandonment in termination-of-parental-rights cases. The father also argues that his filing of a domestic-relations action in which he sought a custody modification and a finding of contempt against the mother based on allegations that she had wrongfully restricted his access to the children in the months before the filing of the petitions to terminate his parental rights shows that he had not abandoned his children.[1] The filing of a concurrent domestic-relations action does not establish a relationship with either child or negate a finding of abandonment. See A.E. v. M.C., 100 So.3d 587, 598 (Ala. Civ. App. 2012) (citing *1099 Ex parte J.W.B., 933 So.2d 1081, 1092 (Ala. 2005), relying in turn on a statement in Judge Murdock's dissent in K.W.J. v. J.W.B., 933 So.2d 1075, 1081 (Ala. Civ. App. 2005) ).
The father does not cite any authority in support of his argument that he did not abandon the children. See White Sands Grp., L.L.C., 998 So.2d at 1058. We note, however, that the juvenile court's finding that the father was absent from the children's lives and that there were periods in excess of four months in which the father had no communication with the children would support a determination that the father had abandoned the children. See § 12-15-319(a)(1). We further note that the juvenile court's findings would have provided a sufficient basis for terminating the father's parental rights pursuant to § 12-15-319(a)(11), which states that "[f]ailure by the parents to maintain consistent contact or communication with the child" is a factor to consider when determining whether to terminate parental rights.
The father appears to assert an argument that the juvenile court could not consider the physical abuse of S.D. committed by the father as a factor when determining whether to terminate his parental rights. See § 12-15-319(a)(3). The father states in his brief:
"Moreover, although the [father] did plead guilty to the abuse of S.D., said facts were heard by a court of competent jurisdiction at the time of the offense who issued three orders, each of which were domesticated by the [juvenile court]. Said court preserved the [father]'s parental rights and ordered specific contact to reunite and rehabilitate the children and the [father]. This [juvenile court] essentially sought to relitigate issues underlying the prior ruling and impermissibly terminated parental rights, substituting its judgment for the judgment of the previous court at which all evidence was heard without the filter of hearsay and with input from all parties."
The father cites no authority for the apparent argument that the juvenile court lacked the ability to consider the father's admitted abuse of S.D. as a factor supporting the termination of his parental rights. We will not reverse the juvenile court's judgments on an undeveloped and unsupported argument. See White Sands Grp., L.L.C., 998 So.2d at 1058.
The father also argues that the juvenile court did not consider viable alternatives to the termination of his parental rights. The father argues that the status quo, i.e., continued counseling for himself and the children, is a viable alternative to the termination of his parental rights. The father asserts that the juvenile court's finding of no viable alternative is unsupported by the evidence and does not meet the requisite clear-and-convincing-evidence standard. "[M]aintaining the status quo is a viable option to terminating parental rights when the parent and the child enjoy a relationship with some beneficial aspects that should be preserved such that it would be in the child's best interests to continue that relationship." S.N.W. v. M.D.F.H., 127 So.3d 1225, 1230 (Ala. Civ. App. 2013).
We have held, however, that when the evidence demonstrates that a parent is incapable of being rehabilitated or that the parent's conduct or condition is unlikely to change in the foreseeable future, " 'obviously no alternative can be considered viable to the end of returning the child to a normal custodial relationship with his or her parent.' " A.E.T. v. Limestone Cty. Dep't of Human Res., 49 So.3d 1212, 1218 (Ala. Civ. App. 2010) (quoting *1100 D.M.P. v. State Dep't of Human Res., 871 So.2d 77, 92 (Ala. Civ. App. 2003) (plurality opinion) ). There was evidence before the juvenile court from which it could have been clearly convinced that maintaining the status quo was not a viable option. The father points to seemingly positive testimony from Thea Langley. The father contends that Langley's testimony shows that reunification with the father would be favorable. The juvenile court, however, was in the best position to evaluate the weight to be given to Langley's testimony. Dunn v. Dunn, 972 So.2d 810, 815 (Ala. Civ. App. 2007). The juvenile court specifically found in its judgments terminating the father's parental rights that Langley's testimony was based upon an incomplete knowledge of the history of the parties. That finding is supported by the record.
Based on the evidence, the juvenile court could have also been clearly convinced that the father did not grasp the severity of his mental-health diagnoses. The father testified that he had been prescribed medication for his mental-health illnesses, but he either did not take the medication or did not take the prescribed amount. There was evidence before the juvenile court indicating that the father's treating mental-health professionals recommended that he attend individual psychotherapy and community-support groups, but the father declined to participate in or to seek that treatment. The juvenile court could have found that the father's mental-health condition rendered him unable to properly care for the children, see § 12-15-319(a)(2), and that the father's condition was not likely to improve based on his testimony and his past conduct. See S.G. v. Barbour Cty. Dep't of Human Res., 148 So.3d 439, 445-46 (Ala. Civ. App. 2013) (concluding that the juvenile court could have found from the mother's testimony that she suffered from a mental illness that rendered her unable to care for the child and that her condition was unlikely to change in the foreseeable future). Further, the evidence contained in the record supports the juvenile court's finding that the father had not taken steps as prescribed by the Indiana court to reenter the children's lives and rehabilitate himself. Based on the evidence in the record, the juvenile court could have found that maintaining the status quo was not a viable alternative. The juvenile court's finding that there exists no viable alternative to termination of the father's parental rights is supported by clear and convincing evidence.
Conclusion
The evidence before the juvenile court was sufficient to clearly convince the juvenile court that grounds for termination of the father's parental rights had been established and that the father's conduct or condition was unlikely to change in the foreseeable future. The juvenile court's finding that there exists no viable alternative to the termination of the father's parental rights is also supported by clear and convincing evidence. Accordingly, the judgments of the juvenile court terminating the father's parental rights are affirmed.
2160881-AFFIRMED.
2160882-AFFIRMED.
Thompson, P.J., and Pittman and Moore, JJ., concur.
Thomas, J., concurs in the result, without writing.

Although no order of the domestic-relations court appears in the record on appeal, it appears from the testimony that the domestic-relations case was stayed pending the outcome of this case.